## 6242.　GRIGGS v. THE STATE.

1. The imposition of penalties within the limits fixed by law rests within the sound discretion of the trial judge, and this court has no jurisdiction to control such discretion. *Harper* v. *State,* 14 *Ga. App.* 603 (81 S. E. 817); *Hays* v. *State,* 14 *Ga. App.* 604 (81 S. E. 914); *Reese* v. *State,* 3 *Ga. App.* 610 (60 S. E. 284); *Brown* v. *State,* 8 *Ga. App.* 691 (70 S. E. 40); *Dunham* v. *State,* 8 *Ga. App.* 668 (70 S. E. 111); *Brantley* v. *State,* 87 *Ga.* 149 (13 S. E. 257); *Anderson* v. *State,* 63 *Ga.* 678.

2. The notes of the trial judge, attached to the 2d, 3d, and 4th grounds of the amendment to the motion for a new trial, amount to a disapproval of each of these grounds, and therefore these grounds present no question for determination. *Shierling* v. *Richland Grocery Co.,* 9 *Ga. App.* 271 (70 S. E. 1126); *Franklin County* v. *Gillespie,* 137 *Ga.* 567 (73 S. E. 833).

3. The testimony offered to show the condition of certain wounds inflicted upon the defendant by a person other than the deceased, the exclusion of which is complained of on the ground that this evidence was competent to show a joint attack upon the defendant, was properly rejected, since it not only fails to reveal anything of the kind, but, on the contrary, clearly establishes that the wounds referred to were not inflicted until after the homicide.

4. No reversible error is shown by the ground of the motion for a new trial which complains that counsel for the accused applied to the court for an hour's extension of the time for the argument, in addition to the two hours allowed under the rule, and that the judge refused this application, with the remark that he would give counsel the two hours allowed by law only, since the testimony was short, but later and before the argument began announced that he would allow one half of the additional time requested to both sides. The matter was wholly discretionary with the trial judge, under the rules of the superior court as amended by the convention of judges, December 19, 1911. Civil Code, § 6264. See also *Price* v. *State*, 137 *Ga.* 71 (72 S. E. 908); *Lindsay* v. *State*, 138 *Ga.* 818 (76 S. E. 369).

5. The court charged the jury fully and clearly on the doctrine of reasonable doubt, and therefore there was no error in the instruction that "mathematical certainty is not required; moral and reasonable certainty is all that can be expected in a judicial investigation." *Smith* v. *State*, 10 *Ga. App.* 840 (74 S. E. 447). See also *Butler* v. *State*, 142 *Ga.* 286 (82 S. E. 654), *Thigpen* v. *State*, 11 *Ga. App.* 846 (76 S. E. 596).

6. Where upon a trial for murder the evidence for the State, if credible, shows that the homicide was without justification or extenuating circumstances, and the evidence for the accused and his statement to the jury are to the effect that he took the life of the deceased in self-defense, the following instruction is not cause for a new trial: "When a homicide is proven the law presumes malice, and, unless the evidence shall relieve the slayer or mitigate the offense, he should be found guilty of murder. The legal presumption of innocence is removed by proof which satisfies your minds to a moral and reasonable certainty and beyond a reasonable doubt that the killing has been done by the accused; it is then upon him to justify or mitigate the homicide. The proof to do this may come from the testimony of either side, or it may come from the testimony of both sides." See *Nail* v. *State*, 125 *Ga.* 234 (54 S. E. 145); *Tolbirt* v. *State*, 124 *Ga.* 767 (53 S. E. 327), and citations. When a homicide is proved, the law presumes malice, and unless the evidence should relieve the slayer he should be found guilty of murder. See 7 Enc. Dig. Ga. R. 69, and cases there cited. "In such a case [as is now under consideration] it is proper to charge the jury that the law presumes every homicide to be malicious, until the contrary appears from circumstances of alleviation, or of excuse, or justification, and that it is incumbent on the accused to show such circumstances, unless they appear from the evidence produced against him." *Delk* v. *State*, 135 *Ga.* 312 (69 S. E. 541, Ann. Cas. 1912A, 105).

(a) Since homicide means "the killing of any human being" (Standard Dictionary), the exception that the trial judge "speaks of the killing as a homicide" requires no further comment.

(b) The exception that the court erred in instructing the jury that "when a killing has been shown, it is upon the defendant to justify or mitigate the homicide" is without merit. See *Delk* v. *State*, supra, on the precise point.

(c) Since the defendant was convicted of manslaughter, and not of murder,

and malice is not an ingredient of the former crime, no harm could reasonably have resulted to the defendant from this charge in any event.

7. The court did not err in charging the jury as follows: "Now, to reduce an unlawful, intentional killing to the offense of voluntary manslaughter, the evidence should show either some assault by the deceased, or an attempt by the deceased to commit a serious personal injury upon him greater than a provocation by words, threats, menaces, or contemptuous gestures, and less than a felony, or that there were other equivalent circumstances surrounding the defendant at the time of the killing to justify the excitement of passion under which he labored." It appears from the note of the presiding judge that the law touching manslaughter was given in charge on written request of counsel for the defendant. Provocation by words, threats, menaces, or contemptuous gestures can not reduce a murder to voluntary manslaughter, but might amount to a complete justification if the jury should determine that they were sufficient, under the circumstances, to excite the fears of a reasonable man that a felony was about to be committed upon him. This charge did not withdraw from the consideration of the jury the defense of reasonable fears excited by words, threats, etc. The court did not charge the jury that "provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder" (Penal Code § 65).

8. To the 11th ground of the amendment to the motion for a new trial, the judge appended the following note: "There is no such expression as the one complained of here in the charge, and no such charge was made by the court." We, therefore, can not consider this assignment of error.

9. Exception was taken to the following charge to the jury: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary, or that the circumstances surrounding the slayer at the time the mortal blow was inflicted were such as to make it apparently so to a reasonable man. The idea of prevention or defense against an impending or progressive wrong must enter into all cases of justifiable homicide; and in cases of self defense it is only when the impending or progressive wrong amounts to a felony that the killing is justifiable." The sole exception taken to this charge is that it "was not applicable to the facts proven in the case, and the jury did not understand it, as the defendant contends. Defendant contends that this section of the code was not applicable to this case." This excerpt from the charge is not objectionable on the ground assigned. If it had been excepted to on the ground that it confused the law embraced in section 73 of the Penal Code with that laid down in section 71, a different question might have been presented. See *Pugh v. State*, 114 *Ga.* 16 (39 S. E. 875); *McAllister v. State*, 7 *Ga. App.* 541 (67 S. E. 221). The charge was clearly applicable to the contentions raised by the defendant's statement at the trial.

10. There was no error in charging the jury that the shooting of the defendant after he had slain the deceased, by one who appeared at the scene after the homicide, and whose connection with the antecedent

fatal affray was not disclosed by any evidence whatever, but who apparently fired upon the accused either under the impression that he would thereby protect the fallen man from further injury, or from motives of revenge on account of the homicide just committed, had nothing to do with the guilt of the accused.

11. The court correctly instructed the jury that evidence introduced for the sole purpose of impeachment could not be considered for any other purpose. The jury are the sole judges as to whether an attempt to impeach a witness by any method known to the law has been successful, and the jury may accept the testimony of a witness whom it is sought to impeach, rather than that of the impeaching witness. *Rice* v. *City of Eatonton*, 15 *Ga. App.* 505 (83 S. E. 868); *Huff* v. *Brown*, 104 *Ga.* 523 (30 S. E. 908); *Powell* v. *State*, 101 *Ga.* 9-11 (29 S. E. 309, 65 Am. St. R. 277), *Brown* v. *State*, 10 *Ga. App.* 50 (72 S. E. 537); *Solomon* v. *State*, 10 *Ga. App.* 469 (73 S. E. 623).

12. The instruction by the court, in charging as to a reasonable doubt, that "this doubt must grow out of the evidence. You can not go outside of the evidence to get it. It may arise from the lack of testimony," was not subject to the exception that it excluded from the consideration of the jury any doubt which might be created by the statement of the defendant. The jury were elsewhere fully instructed by the court on the law as to the defendant's statement, and also as to their duty to acquit unless they were satisfied of his guilt beyond a reasonable doubt, and therefore the omission to charge specifically that such a doubt might grow out of the defendant's statement was not error. *Everett* v. *State*, 15 *Ga. App.* 390 (83 S. E. 428); *Cartledge* v. *State*, 15 *Ga. App.* 396 (83 S. E. 430); *Riggins* v. *State*, 15 *Ga. App.* 398 (83 S. E. 503); *Layton* v. *State* 15 *Ga. App.* 416 (83 S. E. 431); *Bragg* v. *State*, 15 *Ga. App.* 623, 627, 629 (84 S. E. 82); *Early* v. *State*, 14 *Ga. App.* 467 (81 S. E. 385), and citations; *Hart* v. *State*, 14 *Ga. App.* 714 (82 S. E. 164); *Lewis* v. *State*, 11 *Ga. App.* 102 (74 S. E. 708); *Vaughn* v. *State*, 88 *Ga.* 731-738 (16 S. E. 64); *Walker* v. *State*, 118 *Ga.* 34 (44 S. E. 850); *O'Dell* v. *State*, 120 *Ga.* 152 (47 S. E. 577).

13. The court did not err in instructing the jury that they must neither be influenced by sympathy on the one side nor by prejudice on the other, but confine themselves alone to the testimony introduced and the law as given in charge, and determine the truth of the issue; or in further instructing them that they were not responsible for the verdict, but only for the truth of the same. The instruction that the jury should confine themselves to the testimony introduced upon the trial did not exclude from their consideration the statement of the prisoner, since the court had elsewhere fully instructed the jury that they might give the prisoner's statement such weight as they saw proper, and believe it in preference to the sworn testimony in the case, if they saw proper to do so.

14. The court did not err in charging the jury that they should not consider any facts connected with the case on trial derived from their personal knowledge, but should confine themselves to the evidence and the law as given in charge.

15. The ground of the motion for a new trial based upon alleged newly discovered evidence can not be considered, since the code provides that "if the newly discovered evidence is that of witnesses, affidavits as to their residence, associates, means of knowledge, character, and credibility must be adduced" (Civil Code, § 6086); and no such affidavits are attached to the motion for a new trial in this case.

16. Where in a trial for murder a charge as to the law of voluntary manslaughter is given in response to a written request from counsel for the accused, and a verdict of manslaughter is returned, the defendant is estopped from complaining that the charge was unauthorized by evidence, but he may nevertheless insist, under the general grounds of his motion for a new trial, that the verdict should be set aside as contrary to law, if the evidence and his statement at the trial should altogether fail to introduce any element of manslaughter into the case.

DECIDED OCTOBER 26, 1915.

Conviction of manslaughter; from Gilmer superior court—Judge Patterson. December 5, 1914.

*John R. Cooper, A. H. Burtz, A. N. Edwards,* for plaintiff in error.

*Herbert Clay, solicitor-general,* contra.

WADE, J. The evidence in behalf of the State in this case makes out a clear and unprovoked case of murder. No evidence was offered in behalf of the defendant, but, according to his statement to the jury, he was justified in taking the life of the deceased in order to protect himself from a felonious assault, acting under the fears of a reasonable man that his life was in jeopardy. According to the wife of the deceased, who witnessed the inception of the tragedy, the slayer and the deceased, while drinking together at the home of the latter, became intoxicated and began quarreling, and the deceased ordered the accused to leave his house; the deceased made no effort to assault the defendant, but followed him to the door as he made his exit, and no threat was made by either, and no attempt made by either to strike the other; the defendant's horse was tied in front of the house, and after leaving the house the defendant approached the horse and fired his pistol three times "straight up" into the shade-tree to which the horse was hitched; the deceased followed the defendant out to his buggy, and, when the horse became frightened at the pistol shots, he told the defendant he would untie the horse, as it would choke to death; whereupon the defendant declared with an oath that he had money to pay for the horse, and fired upon and killed the deceased without cause or excuse, the latter being unarmed and making no effort to

20

do him any violence. The accused, in his statement to the jury, asserted that he and the deceased were drinking together in the home of the latter, when the deceased attempted to inaugurate a quarrel with him and ultimately threatened him with a gun and pulled out a knife, and apparently was prevented only by the inter-position of the wife of the deceased from consummating a deadly assault upon him; that he (the defendant) retreated backwards from the house, backed off the front porch, and fell, went to his horse and buggy, intending to leave the vicinity before any trouble resulted, and, while he was standing there fixing one of the traces, which was loose, the deceased came by with a gun and went beyond to another house, went around the house, and then returned with the gun in his hand 'and seized and attempted to hold the defend-ant's horse, and, when the defendant inquired what his purpose was, replied with an oath that he intended to kill the defendant, and threw up his gun as if about to execute the threat; and there-upon the defendant drew his pistol and fired at and killed the de-ceased, in order to save his own life.

There was no evidence and nothing in the statement of the de-fendant to show any actual assault upon the accused by the de-ceased, or any attempt by the deceased to commit a serious personal injury on the defendant amounting to less than a felony; nor did any other equivalent circumstances appear that might justify the excitement of passion on the part of the defendant and exclude all idea of deliberation or of malice, either expressed or implied. The State's witnesses asserted that the deceased made no attempt even to assault the defendant, and in fact gave him no provocation what-ever; whereas the defendant insisted that the deceased advanced upon him with a deadly weapon when he was seeking peaceably to leave the house of the deceased in order to avoid the possibility. of a serious quarrel, and that thereafter the deceased made an effort to assault him with a deadly weapon and compelled him, under the fears of a reasonable man, to shoot in order to protect his own life. There was nothing to show that the killing resulted from such a sudden, violent impulse of irresistible passion as might under the law reduce the crime from murder to manslaughter. The statute itself declares that "provocation by words, threats, menaces, or con-temptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder;" and to hold that the

wordy altercation between the slayer and the deceased while in the house of the latter, or the abusive epithets applied by the deceased to the accused while holding the latter's horse and declaring his purpose to kill the defendant, could, without more, reduce the homicide from murder to manslaughter, would be to hold, in the teeth of the statute, that the killing of another provoked by words only might amount to less than murder, and would authorize any person aggrieved on account of verbal insults to slay his offender without fear of any more serious punishment than that awarded to one who commits manslaughter by killing his opponent while under the influence of irresistible excitement of passion. Human life is already too cheap to be thus further cheapened; and no matter how vile the epithets or how aggravating the insults or mortifying the accusations to which a person is subjected, if he slay the insulter or accuser for words alone, he must be held guilty of murder, and not of a lesser offense.

There is nothing in the evidence or in the statement of the accused to support the inference that there was a mutual intention to fight, and that the deceased approached the accused after the latter had left the house in furtherance of that intention; and the "equivalent circumstances" which under the statute may sometimes justify the excitement of passion and exclude all idea of malice do not include words, threats, menaces, or contemptuous gestures. Penal Code, § 65; *Edwards* v. *State, 53 Ga.* 428, 429. Such provocation alone will not justify the excitement of passion that will reduce a homicide from murder to voluntary manslaughter. *Heard* v. *State,* 114 *Ga.* 90 (39 S. E. 909). In this case, as was said in *Herrington* v. *State,* 125 *Ga.* 745 (54 S. E. 748), "The evidence for the State demanded a verdict for murder. The accused introduced no evidence, but his statement, if credible, authorized an acquittal. There was no view of the evidence or the statement of the accused, under which a verdict for voluntary manslaughter could be legally rendered, and it was error to give in charge the law relating to this grade of homicide. The accused having been convicted of voluntary manslaughter, a new trial must be granted." Able counsel for the State himself asserts in his brief that "the evidence absolutely warranted a verdict for murder, and the only squint at voluntary manslaughter was in the statement of the plaintiff in error." Viewing the case from a point of view essentially

different from that which a public prosecutor could reasonably be expected to occupy, we are unable to find that the statement of the accused even "squints" at or indirectly suggests manslaughter.

The charge touching the law of voluntary manslaughter was given by the court in compliance with a written request from counsel for the defendant, and therefore the defendant can not now be heard to complain that this charge was inapplicable to the facts in evidence. In *Barnett* v. *State,* 136 *Ga.* 65 (70 S. E. 868), the Supreme Court said: "An irrelevant instruction given at the request of the counsel for the accused is not cause for a new trial; especially so, when it is apparent that such instruction was not prejudicial to the accused." In that case the trial judge gave (as in this case) instructions covering the law of voluntary manslaughter, in response to a written request on the part of counsel for the accused. In a note attached to the motion for a new trial in that case the judge stated that the charge on manslaughter, which was excepted to as not justified by the evidence, was given at the special instance and earnest request of the prisoner's counsel, though he was not of the opinion at the time of the trial "that it was exactly fair to the State to charge the various grades of the homicide, and so informed prisoner's counsel when said request was made, but on reflection complied with said request and gave the charges herein excepted to at the request of counsel as stated." In the *Barnett* case, supra, the accused was convicted of murder; so it is obvious that in no event could any harm have resulted to him. In this case it may be suggested that had the court not given in charge the law of manslaughter, the jury may have preferred to acquit him, rather than to find him guilty of murder, and thereby subject him to capital punishment or life-imprisonment, and that therefore the charge touching the law of manslaughter, which was wholly unauthorized by the evidence or the prisoner's statement, was harmful to the accused because it may have contributed to bring about a compromise verdict against him for the lesser of the two grades of homicide; but the principal reason upon which the ruling in the *Barnett* case, supra, was based applies equally well in this case; and it might be also said that the charge as to manslaughter may possibly have saved the accused from a verdict of murder.

In *Hicks* v. *State,* 105 *Ga.* 627, 631 (31 S. E. 579), it is said: "One ground complains of the charge given on the subject of con-

fessions, but the trial judge certifies that this charge was given at the request of counsel for the accused. This being true, counsel are estopped to assign error thereon." The rule as here expressed appears to us to be sound and reasonable. The accused should not be allowed to invoke through his counsel a ruling which may either contribute to bring about a certain result or may altogether produce that result, and then be permitted to complain that the court erred in doing the identical thing. which he himself requested should be done. If one convicted of crime should ever be estopped from complaining of results brought about by himeslf, assuredly this is such a case. So it is clear to us that all grounds of the motion for a new trial based upon the fact that the court instructed the jury as to the law of voluntary manslaughter are entirely without merit.

While it is true that the verdict of manslaughter might not have been returned if the court had not given the charge on that subject invoked by the request of counsel for the defendant, and, as already said, the accused can not properly be heard to complain that the court erred in giving the requested charge, even though it was inapplicable to the evidence, nevertheless, if the evidence wholly fails to support the verdict which perhaps resulted in consequence of the requested charge, the accused is not estopped from complaining that the verdict is without evidence to support it, and consequently contrary to law. Able counsel for the defendant may have misunderstood some of the evidence as it fell from the lips of the witnesses during the progress of the trial, and, acting in entire good faith and prompted by the desire to conserve every right to which the accused might be entitled under any phase presented by the testimony, may have made the request believing at the time that manslaughter was involved in the case, though such a conclusion may have proved to be entirely incorrect when the report of the evidence adduced at the trial was thereafter inspected.

Requests on the part of a defendant for particular instructions to the jury are made at his peril, it is true, where the requests are complied with, since he is estopped from assigning error thereon, though the instructions thus invoked be erroneous and extremely prejudicial to him, but we see no reason why he should be deprived of his right to complain where the instruction invoked by his request authorizes the jury to return a particular verdict which is

*wholly* unsupported by any evidence. A verdict unsupported by some evidence is contrary to law, and it would be farcical to permit such a verdict to stand merely because the erroneous instruction to the jury which probably led to its rendition was requested by the accused. The accused can not complain of what the court did at his request, but he may properly complain of what the jury did, if the evidence fails to support their finding. He can not ask for a reversal because the court yielded to his insistence and charged or presented a theory which the evidence did not authorize; but he is not estopped from complaining that the jury convicted him upon a theory without any evidence to support it. To prescribe a rule so harsh might, as already suggested, permit a verdict of guilty to stand where there was absolutely no evidence whatever to support it, and where the accused was asserting his entire innocence of any offense under the law, and it would certainly be an anomaly in criminal jurisprudence. Since, therefore, the evidence in this case does not authorize the verdict returned by the jury, the verdict is contrary to law and must be set aside.

It is unnecessary to enlarge on the various rulings in the headnotes which relate to special assignments of error contained in the amendment to the motion for a new trial.    *Judgment reversed.*

BROYLES, J., concurring specially. I agree that, under the evidence and the statement of the accused, the verdict of manslaughter was not warranted. The evidence for the State made out a plain case of cold-blooded murder, while if the defendant's statement should be believed the killing was justifiable. The case will be retried on the clear-cut issue that the defendant should either be convicted of murder or acquitted.