## 8354. PARTEE v. THE STATE.

1.  Where the defendant in a criminal case enters a general plea of not guilty, but interposes and relies upon a special defense, it is not error, requiring a new trial, for the trial judge, in his enumeration of the defendant's contentions, to call the jury's attention to the special defense.

2.  The charge of the court on the methods of impeachment referred to in

sections 1051, 1052, and 1053 of the Penal Code of 1910 was warranted by the evidence.

3. A party can not obtain a reversal for an error which he has invited.

4. The evidence for the State, if believed, was sufficient to support a conviction of the offense of murder. The defendant having been found guilty of the lesser offense of voluntary manslaughter, a new trial will not be granted him, it appearing that the verdict was in conformity with the charge of the court given at his request.

5. In the absence of a timely and appropriate request, the failure of the court to give instructions applicable to isolated facts and circumstances relied upon by a party to sustain his contentions is not error.

6. A ground of the motion for a new trial complaining of the failure of the court to submit an instruction upon the law of justifiable homicide is not a good exception when it fails to point out what the trial judge should have charged, or why the omission to charge as suggested is error.

DECIDED APRIL 24, 1917.

Indictment for murder—conviction of manslaughter; from Clarke superior court—Judge Brand. November 27, 1916.

*W. D. McNeil, G. L. Goode, Fermor Barrett, Thomas & Thomas, H. C. Tuck,* for plaintiff in error.

*W. O. Dean,* solicitor-general, *J. B. Gamble, A. S. Skelton, T. J. Brown, H. M. Dorsey, H. H. Chandler, R. B. Russell, W. R. Little, W. M. Smith, C. Bond, D. Davis, E. A. Stephens,* contra.

GEORGE, J. T. S. Davis, Cohen Davis, and Alfred Davis, three brothers, were in the town of Lavonia, Georgia, in the afternoon of October 23, 1915, for the purpose of attending a show. Just before the beginning of the show Cohen Davis engaged in a difficulty with Pike Whitworth. He accused Whitworth of calling him a vile name, and slapped his face. Spectators interfered and Davis went with a friend into the circus tent. Inside the tent he and his two brothers were seated on the lower seats, awaiting the beginning of the performance. It appears that one Tribble had reported the difficulty between Cohen Davis and Whitworth to policemen Ledford and Weldon. These officers, together with J. W. Partee, the defendant in this case, entered the tent and approached the three Davis boys. The State contended that when the officers approached them Ledford said to Cohen Davis, "Cohen, let me see you a minute," and, reaching over, attempted to pull him out of his seat. Tom Davis arose, and, placing his hand on the officer's shoulder, requested that he be allowed to make bond for his brother. Ledford declined to accept bail, and continued his efforts to carry

48

Cohen Davis from the tent. At this time Weldon struck Cohen Davis with a walking cane one or more times over the head and the shoulders. Partee was standing on the right of Ledford and Weldon. He stepped around and behind these officers. Tom Davis had withdrawn his hand from the officer's shoulder and reached down, apparently to take hold of his brother Cohen, who was still seated. As Partee reached the left side of the officers, and just as Tom Davis leaned forward with his back to the officers and to Partee in particular, Partee drew a pistol from his pocket, pointed it directly at Tom Davis, and fired twice. Several witnesses testified that the pistol in the hands of Partee, at the time it was fired, was about two feet from Tom Davis's body. The latter walked a few feet, sank to the ground, was taken from the tent, and died a few minutes later. During the shooting which followed the slaying of Tom Davis, his brother Cohen was killed, and officers Ledford and Weldon also received wounds. Ledford and Weldon were not present at the difficulty between Cohen Davis and Whitworth outside the tent. No warrant had been issued for the arrest of Davis, and he was not endeavoring to escape. He was committing no offense at the time of the attempt to arrest him. It was contended by the defendant that when the officers approached Cohen Davis the three Davis brothers arose almost simultaneously, drew their pistols, and began firing. The evidence offered by the defendant upon his trial was to the effect that Weldon shot and killed both Tom and Cohen Davis. According to the defendant's evidence and his contention, when the officers approached the Davis boys there was a general fight between the three Davis brothers on the one hand and the two arresting officers on the other; the defendant did not participate in the fight, and did not shoot the deceased. Immediately after the shooting the defendant left the scene of the killing. That night he boarded an engine of a passing train, concealed himself in the tender or coal-box, and was not again seen in Lavonia until after his arrest in the State of South Carolina. A discussion of the evidence in detail is unnecessary. The trial of the case consumed four days. The evidence for the State, if credible, made an unprovoked case of murder against the defendant. The evidence for the accused and his statement, if believed, established a case of justifiable homicide. It is doubtful if voluntary manslaughter is in the case. The defendant, however,

requested the court to charge on manslaughter, and the jury found him guilty of that offense.

1. In the first and seventh grounds of the amendment to the motion for a new trial it is complained that the court, in the charge to the jury, restricted them to a consideration of whether the defendant or the policeman Weldon killed the deceased; and that the instruction given was not adjusted to the evidence and was prejudicial to the accused, because there was testimony tending to show that some person or persons other than the accused or the policeman might have killed the deceased. The presiding judge certifies that the defendant contended upon the trial that the deceased was shot and killed by the officer Weldon, and not by the defendant. From a close scrutiny of the charge it appears that the court, in the excerpts to which exceptions are taken, was stating the contention of the defendant, for the purpose of applying the law thereto. We think the first headnote of this decision announces a sound principle. If the defendant, under a general plea of not guilty, interposes a specific defense, the trial judge, in his charge to the jury, is authorized to instruct them upon that defense. It is the duty of the trial judge to deliver instructions appropriate to every phase of the evidence, without regard to whether a particular view of the case may or may not have been insisted upon by the defendant; but it is quite apparent that there is no merit in the contention presented in these grounds of the motion for a new trial. The jury, under the evidence in this case, could only find that the killing was done either by the defendant or the officer Weldon. Any other finding would amount to mere conjecture. Counsel for the plaintiff in error, in the brief filed in this court, used this language: "There was only one issue in this case—did Partee kill Davis, or was Weldon the author of the shooting?" We think counsel have rightly conceived the facts of this record, and we are equally certain that the plaintiff in error and his counsel have no right to complain that the trial court instructed the jury upon a theory which they specifically and consistently insisted upon throughout the trial of the case, and still urged upon this court on a review of the case.

2. The statement made in the second headnote disposes of the fourth ground of the amendment to the motion for a new trial. The State attempted to impeach certain witnesses of the defend-

ant by the three methods referred to in sections 1051, 1052, and 1053 of the Penal Code of 1910. The evidence for the State tended to disprove certain facts testified to by certain of the defendant's witnesses; contradictory statements were shown to have been made by certain of them, and it is conceded by counsel for the plaintiff in error that proof of the general bad character of at least one of the witnesses introduced by the defendant was offered.

3, 4. In grounds 2 and 3 of the amendment to the motion for a new trial it is complained that the court committed error harmful to the defendant in charging the law of voluntary manslaughter. In grounds 5 and 6 of the amendment it is complained that the court erred in charging upon the law of justifiable homicide, and in failing especially to instruct the jury as to the circumstances under which the defendant would have been justified in taking the life of the deceased in the protection of the two arresting officers. In regard to the exceptions taken to the instructions upon the law of justifiable homicide the judge certified that "it was only by request of defendant's counsel that the court made any charge upon the subject or defense of justifiable homicide based upon the theory that Partee shot, and therefore the court was extremely cautious not to embrace in this charge anything upon this subject not requested." When it is recalled that the defendant contended upon his trial, and contends here, that he did not shoot at all, the fairness of the trial judge, in confining his instructions to the request as made by counsel for the defendant, is manifest. A charge detailing the circumstances under which Partee would have been justified in shooting to protect the life of the two arresting officers would have been at once unfair and subject to the criticism that it amounted to an intimation of opinion on the part of the court that Partee did in fact shoot and kill the deceased. According to the notes of the trial judge, all the charges excepted to were given upon the express request of counsel for the defendant, with the single exception of the charge relating to the impeachment of witnesses. Not only is this fact stated after each ground of the motion relating to these instructions, except that relating to impeachment, but in the approval of the grounds this statement by the court appears: "During the four days' progress of this trial not an adverse ruling to the defendant was made by the court. The court omitted to charge nothing in behalf of the defendant to which

its attention was called by defendant's counsel, and nothing was charged, of which complaint is made in said amended motion, which was not charged at the request of defendant's counsel, except and save only ground 4, with reference to the impeachment of witnesses." Even if, as now contended by the plaintiff in error, the evidence made only a case of murder or of justifiable homicide and no middle ground appears in the record, the plaintiff in error can not complain because the judge, in compliance with his express request, charged on the subject of voluntary manslaughter; nor can he have a reversal of the judgment in his case for an error in the charge of the court upon the law of justifiable homicide which he himself expressly invited. This simple statement appears to be incontrovertible.

In *Hicks* v. *State*, 105 *Ga.* 627, 631 (31 S. E. 579), this statement appears: "One ground complains of the charge given on the subject of confessions, but the trial judge certifies that this charge was given at the request of counsel for the accused. This being true, counsel are estopped to assign error thereon." In *Howard* v. *State*, 115 *Ga.* 254 (41 S. E. 654), it was said: "So it must be ruled, as a matter of law, that where, in the trial of a person charged with a crime, that person through his counsel submits to the judge certain written instructions which he desires given to the jury, he can not afterwards be heard to complain that the judge gave the instructions as requested, even if such instructions were erroneous. A new trial can not, therefore, be granted on this ground of the motion." In *Horton* v. *State*, 120 *Ga.* 307 (47 S. E. 969), this language occurs: "A party can not obtain a reversal for an error which he has invited, as by a request to charge, or by formal admission that a given principle is not involved in the case." In *Quattlebaum* v. *State*, 119 *Ga.* 433 (46 S. E. 677), it was ruled that "A party can not obtain a reversal for an error which he has himself invited. . . The defendant was found guilty of voluntary manslaughter; and even if, as contended by him, the evidence made out a case of murder or justifiable homicide, he can not complain because the judge, in compliance with his oral and written requests, charged on the subject of voluntary manslaughter." In *Hopkins* v. *State*, 119 *Ga.* 569 (46 S. E. 835), it was ruled that, "the defendant having been found guilty of the lesser offense of shooting at another, a new trial will not be granted,

it appearing that the verdict was in conformity with a charge given at his request;" and it was there said: "It is assigned as error that the verdict is contrary to law and the evidence; the plaintiff in error insisting here that he should have been found guilty of assault with intent to murder, or not guilty. There was evidence to warrant the charge in reference to shooting at another. But in any event the defendant can not complain of a verdict which was rendered in conformity with a charge requested by himself." The writer has not overlooked the decision of this court in *Griggs* v. *State,* 17 *Ga. App.* 301 (16), 309 (86 S. E. 726). The decision in the *Griggs* case is to the effect that a request by the defendant in a criminal case for a specific charge will estop him from complaining that the charge given upon his request was unauthorized by the evidence, but that a defendant may nevertheless insist, under the general ground of his motion for a new trial, that the verdict is contrary to law, where the evidence for the State, if believed, makes out a case of murder, and the evidence for the defendant and his statement, if accepted, make a clear case of justifiable homicide. A verdict of manslaughter in such a case is said to be without evidence to support it and, therefore, contrary to law. Where the evidence for the State, if believed, makes a case of murder, and where the evidence for the defendant and his statement, if credible, make a case of justifiable homicide, a verdict of manslaughter, under a charge of the court on manslaughter, given upon the express request of the defendant, is not without evidence to support it and is not contrary to law merely because the superadded ingredient of malice has been shown by the proof. If the evidence authorizes a conviction of murder, but upon his own invitation the defendant is convicted of the lower grade of homicide,—manslaughter,—the verdict against him is not without evidence to support it. The defendant has committed the crime of which he was convicted. He, by his own request, made in open court, injected into his case the law of manslaughter. The evidence proves him guilty of everything alleged in the indictment. It does all this, and the only objection is that it superadds to the facts thus found that the killing was with malice aforethought. In such a case, although there is nothing in the evidence or in the defendant's statement to warrant the charge on manslaughter, the defendant has no reasonable ground for complaint. He is none the less guilty of

manslaughter because perchance he committed the offense of mur-. der. Estoppel, in a strict sense, has nothing to do with the matter. The law requires consistency both in substance and in procedure. A decent regard for the orderliness of the trial compels this conclusion. So far as anything in the decision in the *Griggs* case, supra, is not in accordance with this view, it will not be followed. Chief Judge Wade, who wrote the opinion in that case, concurs in this ruling, on the authority of *Hopkins* v. *State*,.supra.

5, 6. Headnotes 5 and 6 require no elaboration. There is no complaint of any ruling admitting or rejecting testimony. All of the alleged errors depend upon criticisms on disjointed excerpts from the charge, injected into the case by the express request of the plaintiff in error; with two exceptions to which reference is made in headnotes 5 and 6. The language of Chief Justice Bleckley in *Brown* v. *Matthews*, 79 *Ga.* 1 (4 S. E. 13), is peculiarly appropriate: "A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole, it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when the parts are all united. United they stand, divided they fall." The judge did not err in overruling the motion for a new trial. *Judgment affirmed. Wade, C. J., and Luke, J., concur.*