[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 974 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 975 
Under an indictment charging Leverett with the capital offense of the May 30, 1980, murder for hire of his wife in violation of § 13A-5-31 (a)(7), Code of Alabama (1975) (Blue Paperback Pamphlet 1978) (repealed 1981),[1] Leverett was convicted on May 2, 1983, of the offense of murder. He was sentenced to imprisonment for a term of life.
 I
Leverett contends that the trial court erroneously instructed the jury on the offense of murder and, consequently, that the jury was not authorized to return a verdict of guilty of murder. He bases this contention on three grounds. He first argues that murder is not a lesser included offense of the capital offense of murder for hire which was charged in the indictment. This court has already suggested that murder is a lesser included offense of murder for hire. E.g. Williams v.State, 461 So.2d 834 (Ala.Crim.App. 1983) (on rehearing), cert. granted, 461 So.2d 852 (Ala. 1984); Busby v. State,412 So.2d 837 (Ala.Crim.App.), cert. denied (Ala. 1982). The rationale for this conclusion is as follows:
 "Four of the capital offenses in the 1975 Act [one being murder for hire] are based on the crime of murder in the first degree, which was defined as the willful, deliberate, malicious, and premeditated killing of a human being. This component of the capital offense clearly encompasses the Criminal Code definitions of murder, manslaughter, and criminally negligent homicide as lesser included offenses. The Criminal Code provides that a person commits murder if, with the intent to cause the death of another person, he causes the death of that person or of another person. Since a willful, deliberate, and premeditated act is necessarily an intentional act, the crime of murder is a lesser included offense because it can be shown by proof of the same or fewer elements than the capital offense." (footnotes omitted)
Colquitt, The Death Penalty Laws of Alabama, 33 Ala.L.Rev. 213, 262 (1982). See also Crosslin v. State, 446 So.2d 675 n. 1 (Ala.Crim.App. 1983) (wherein murder was recognized as a lesser included offense of murder in the first degree wherein two or more human beings are intentionally killed by one or a series of acts in violation of § 13A-5-31 (a)(10), Code of Alabama (1975) (Blue Paperback Pamphlet 1978).
Leverett further contends that, in the event murder is a lesser included offense, the trial court erroneously instructed the jury regarding this offense because of the preclusion clause of § 13A-5-31 (a), Code of Alabama (1975) (Blue Paperback Pamphlet 1978); he argues that the application ofBeck v. State, 396 So.2d 645 (Ala. 1980), violated the constitutional prohibition against ex post facto application of laws. U.S. Const. art. I, § 9. This particular argument has been foreclosed by the case of Ex parte Potts, 426 So.2d 896,900 (Ala. 1983).
Finally, Leverett contends that the trial court's charge was erroneous because there was no rational basis for a verdict convicting him of murder as required by § 13A-1-9 (b), Code of Alabama (1975); he insists that he could have only been found guilty of capital murder or not guilty at all. The merit of Leverett's assertion is determined by the following principles:
 "The standard to be applied in this state is that in a capital case the jury must be instructed on each lesser-included offense which has `any basis in the *Page 976 
evidence.' Beck v. State, 396 So.2d 645 at 658 (Ala. 1980); Ex parte Kyzer, 399 So.2d 330 (Ala. 1981). A lesser-included offense instruction should be given if `there is any reasonable theory from the evidence which would support the position.' Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367
(1982); Chavers v. State, 361 So.2d 1106 ([Ala.] 1978); Fulghum v. State, 291 Ala. 71, 75, 277 So.2d 886, 890 (1973). Our decisions are to the effect that `Every prisoner at the bar is entitled to have charges given, which, without being misleading, correctly state the law of his case, and are supported by any evidence, however weak, insufficient, or doubtful in credibility.' (Emphasis added.) Gibson v. State, 89 Ala. 121, 8 So. 98
(1889). See also Burns v. State, 229 Ala. 68, 155 So. 561 (1934)."
Crosslin v. State, 446 So.2d at 682 (1983).
After reviewing the evidence, we find that the trial court properly decided that the instruction on the lesser included offense of murder was appropriate under the facts. During presentation of its case, the prosecution introduced testimony in support of its theory that a conspiracy to kill Mrs. Leverett pursuant to a contract for hire existed between Leverett; Prewitt,[2] who admitted killing Mrs. Leverett for the approximate sum of $11,000 paid by Leverett; and McEvoy, who sought out and hired Prewitt at Leverett's request. While this evidence alone, if credible, would have justified a verdict of guilty of the capital offense, further evidence was presented to support the theory that the murderer killed Mrs. Leverett during a robbery in which Mrs. Leverett's diamond ring valued at approximately $17,000 was stolen. The evidence in its entirety could reasonably have supported the theory that Leverett procured, induced, or caused Prewitt to commit the murder or, in the alternative, the theory that Leverett aided or abetted Prewitt in committing the offense. See Busby v.State, supra; Ala. Code, § 13A-2-23 (1975). In fact, Leverett's counsel himself emphasized facts pertinent to the lesser offense of murder when he objected to the trial court's refusal to give the lesser-included offense instruction, as follows:
 "MR. MARSAL: [T]he evidence is that a burglary was to be committed, and this evidence is borne out by the testimony of Steve Hart. Secondly, there is —
"THE COURT: Tie Mr. Leverett into that burglary.
". . . .
 "MR. MARSAL: All right. By the testimony of Prewitt and McEvoy it ties him in. . . . There's evidence to that effect. . . . Prewitt — McEvoy says that Mr. Leverett gave the keys to the house. McEvoy says that he arranged with Prewitt. The act of McEvoy, if he's connected as an accomplice with Prewitt, comes the acts — I mean with Leverett, comes the acts of Leverett. There's unquestionably evidence that a robbery was to take the ring of Mrs. Leverett. I submit to the Court that there's just a mountainous of evidence as to why a jury should be an included offense."
Accordingly, we find that the lesser-included offense instruction was proper.
As a final comment, we note the difficulty in reconciling Leverett's argument with the position adopted by Leverett during his trial for, at trial, Leverett clearly invited the procedure which he now asserts to be reversible error. In addition to submitting written jury instructions stating that murder is a lesser included offense, Leverett vigorously argued that the lesser-included offense instruction was "certainly appropriate under the evidence." This assertion was in answer to the prosecution's argument that only the capital murder charge was appropriate. Furthermore, Leverett entered no objection that the court's charge was erroneous.
Hence, even if the given charge was improper, we would not regard Leverett's complaint as meritorious for he has no cause to complain. A party cannot assume *Page 977 
inconsistent positions in the trial and appellate courts and, as a general rule, will not be permitted to allege an error in the trial court proceedings which was invited by him or was a natural consequence of his own actions. 24A C.J.S. Criminal Law
§ 1842 (1962). See also Brannon v. State, 12 Ala. App. 189,67 So. 634, 635 (1914), cert. denied, 191 Ala. 29, 67 So. 1007
(1915); Livingston v. State, 7 Ala. App. 43, 61 So. 54, 57
(1912) (on rehearing). As Presiding Judge Bowen noted in applying the invited error doctrine, "It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice." Murrell v.State, 377 So.2d 1102, 1105 (Ala.Crim.App.), cert. denied,377 So.2d 1108 (Ala. 1979), quoting Aldridge v. State, 278 Ala. 470, 179 So.2d 51, 54 (1965). The doctrine of invited error has been specifically applied to possible error resulting from the defendant's request for a particular jury instruction. E.g.Jelks v. State, 411 So.2d 844, 848 (Ala.Crim.App. 1981); Burkev. State, 18 Ala. App. 152, 89 So. 162, 164 (1912); People v.Clements, 316 Ill. 282, 147 N.E. 99 (1925); Partee v. State,19 Ga. App. 752, 92 S.E. 306 (1917). In recognizing this doctrine as applicable to the case at bar, we hold that, because of Leverett's actions at trial, Leverett is estopped from complaining of any possible resulting error.
 II
Over various objections, the trial court allowed into evidence the following: (1) McLeod's testimony concerning the instructions he received from McEvoy during their attempt to "rip-off" Leverett of the money he had offered for his wife's murder; (2) the testimony of Prewitt that McEvoy had said that the extra $1,000 of payment for the murder "was for a job well done;" and (3) the testimony of the forensic pathologist that the body of Mrs. Leverett "had more injuries than most of the victims that [he had] known or examined in which there was evidence that they had been robbed and then murdered." These matters were elicited by the prosecution in furtherance of proof of its theory that Mrs. Leverett had been killed pursuant to a contract for hire which was effectuated by a conspiracy between Leverett, McEvoy, and Prewitt. Leverett contends that (1) McLeod's testimony was hearsay because, at the time the instructions were given, no conspiracy existed; (2) the testimony of Prewitt was also hearsay since the statement was made after the conspiracy had terminated; and (3) the pathologist's testimony was elicited without a proper predicate and contained an opinion of an ultimate fact in issue.
It is not necessary for this court to determine the propriety of the trial court's rulings on Leverett's objections or the merit of Leverett's contentions on appeal. If the questioned evidence had been accepted by the jury, the jury would have been authorized to find Leverett guilty of the capital offense. The jury, in determining its verdict, and acquitting Leverett of capital murder, disregarded this evidence; the verdict clearly indicates that the jury was not in any manner inflamed or influenced by these bits of evidence. See Morgan v. State,35 Ala. App. 269, 45 So.2d 802 (1950). Error in the admission of evidence which is shown by the verdict to have had no effect on it or to have caused the defendant no prejudice is not reversible. 24B C.J.S. Criminal Law § 1915 (13) (1962). Thus, there is no reversible error where the defendant was acquitted of the offense with respect to which the improper evidence was admitted, although he was convicted of another offense. Id. Seealso Middleton v. State, 27 Ala. App. 564, 176 So. 613, 614
(1937); Hanson v. State, 27 Ala. App. 147, 168 So. 698, 700, cert. denied, 232 Ala. 585, 168 So. 700 (1936); Lee v. State,16 Ala. App. 53, 75 So. 282, 283 (1917). Because the evidence in question went solely to the proof of the element of aggravation distinguishing the capital offense, which the jury deemed unsubstantiated by the evidence presented, any error, if any, in the introduction of this evidence was not injurious to Leverett; the verdict of the jury cured any possible injury. *Page 978 
 III
During his direct examination, Leverett testified that, although petitions for separate maintenance were filed by his wife during their marriage, no divorce proceedings were initiated. Before Leverett's cross-examination, the prosecution offered State's exhibits 86 and 87, which were the court proceedings of two cases instigated in the Mobile Circuit Court by Mrs. Leverett. Both parties considered these exhibits as evidence of divorce proceedings. While admitting that this evidence was proper impeachment of his testimony, Leverett objected to the admission of the exhibits because they specified the grounds for divorce. Over this objection, the court ruled that the exhibits were admissible with the restrictions that they were not to go to the jury and that their sole purpose was for impeachment.
During Leverett's cross-examination, much confusion arose about the true nature and legal import of these two exhibits. After a lengthy discussion and further cross-examination on unrelated matters, Leverett moved for a mistrial upon the grounds that the prosecution attempted to deceive the trial court and attempted to improperly impeach the defendant by knowingly asserting that State's exhibits 86 and 87 were petitions for divorce when they were, in fact, pleadings for separate maintenance. After reviewing the documents, the court determined that the complaints merely sought separate maintenance. The court then denied Leverett's motion for a mistrial; instructed the jury that the exhibits were petitions for separate maintenance rather than for divorce and that any contrary reference previously made was to be disregarded; and finally polled the jury, all jurors acknowledging that they could follow the court's instructions.
Leverett contends that the trial court's denial of his mistrial motion was reversible error. We disagree. A high degree of "manifest necessity" for the granting of a mistrial must be demonstrated before a mistrial should be granted. Woodsv. State, 367 So.2d 982 (Ala. 1978); Ala. Code § 2-16-233 (1975). "The entry of a mistrial is not lightly to be undertaken. . . . [T]he entry should be only a last resort, as in cases of otherwise ineradicable prejudice." Thomas v. Ware,44 Ala. App. 157, 161, 204 So.2d 501, 504 (1967) (emphasis in original). A mistrial signifies such fundamental errors as to vitiate the result. Id.
Here, we are of the opinion that, not only was any prejudice eradicable, but it was, in fact, eradicated by the trial court's actions. When the trial court acts promptly to impress upon the jury that improper statements and questions are not to be considered, the prejudicial effect of the prosecutor's attempt at improper impeachment is removed. Walker v. State,428 So.2d 139 (Ala.Crim.App. 1982). We find no abuse of discretion in the action of the court in denying Leverett's motion.
 IV
During cross-examination of a character witness for Leverett, the following improper question was asked: "Did you know that on May the 2nd of 1975, excuse me — that on or about April 28, 1975, the FBI investigated Paul Leverett for threatening to blow up an airplane upon which Elizabeth Leverett was supposed to be a passenger?" Leverett waives argument on appeal of the impropriety of this question because no timely objection was interposed. To counter the effect of this question, Leverett, during his direct examination, rendered his account of the alleged incident. In addition, he denied attempting to blow up any plane or being contacted or questioned by a FBI agent.
The testimony claimed to have been erroneously allowed into evidence is that of the prosecution's rebuttal witness Roy Eveland, a retired FBI agent, who testified that, in 1975, he had investigated an alleged bomb threat involving Elizabeth Leverett. Leverett contends that Mr. Eveland's testimony was improper because the prosecution should not be allowed to prove *Page 979 
by a rebuttal witness a specific instance of the defendant's bad character about which a character witness has been cross-examined. See e.g. Helms v. State, 254 Ala. 14,47 So.2d 276 (1950).
Leverett's contention need not be addressed, for this issue was not properly presented to the trial court and consequently is not before us for review. It was after the allegedly improper testimony that counsel objected to a specific question on the grounds that it called for hearsay and that it was "highly improper." These objections were overruled and the remainder of Mr. Eveland's testimony was merely a reiteration of his prior testimony which was in evidence without objection. To be timely, an objection to admission of certain evidence must be made as soon as the ground for the objection becomes apparent. Watson v. State, 439 So.2d 762 (Ala.Crim.App. 1983). By allowing the prosecution to elicit the allegedly erroneous testimony without objection and subsequently entering no motion to exclude this testimony, Leverett waived any alleged error committed by the trial court in overruling his objections. E.g.Thomas v. State, 440 So.2d 1216 (Ala.Crim.App. 1983); Capps v.State, 424 So.2d 681 (Ala.Crim.App. 1982); Howard v. State,417 So.2d 599 (Ala.Crim.App. 1982); Etheridge v. State,414 So.2d 157 (Ala.Crim.App. 1982).
 V
In arguing the prejudicial impact of the alleged errors of Issues II, III, and IV, Leverett raises the alleged impropriety of certain remarks of the prosecuting attorney in his closing argument to the jury. However, the prosecution's closing argument was not interrupted once with objection by defense counsel. Claimed error based upon alleged improper remarks by the prosecution presents nothing for our review where no specific objection was timely interposed and none of the remarks were so grossly improper and prejudicial that neither retraction nor rebuke by the trial court would have destroyed their effect. See Trawick v. State, 431 So.2d 574
(Ala.Crim.App. 1983); James v. State, 246 Ala. 617,21 So.2d 847 (1945). After determining that none of the particular remarks were so improper that their prejudicial quality could not have been eradicated, we find that we have nothing further to review.
 VI
In his final argument, Leverett contends that the trial court erred in denying his motion for new trial, in which he alleged that the prosecuting attorney, through his persistent improper conduct, deprived Leverett of a fair trial. As support for this assertion, Leverett specified the following comments or actions of the State's attorney as improper: (1) in attempting to impeach Leverett, the prosecutor knowingly tried to mislead the trial court and the jury into believing that Mrs. Leverett had commenced divorce proceedings against her husband; (2) he insinuated that Leverett had been investigated for threatening to blow up an airplane, upon which his wife was a passenger, when the prosecutor knew the charge had no factual basis; and (3) he introduced State's exhibit 47, a "mug shot" of Leverett's present wife, and repeatedly referred to the present Mrs. Leverett as "State's Exhibit 47."
In regard to the first incident of prosecutorial misconduct alleged by Leverett, we have already determined in part III that any improper effect of the prosecutor's erroneous assertions was eradicated by the trial court's instructions. Because of the quick, curative actions by the trial judge, any prejudicial effect was removed and the motion for new trial was properly denied in regard to this specific ground. Blake v.City of Montgomery, 386 So.2d 503 (Ala.Crim.App. 1980).
In recognizing the well-established rules of appellate procedure, we hold that the latter two instances of allegedly improper conduct were not cognizable under Leverett's motion by the following general rule:
 "Although courts have sometimes departed from this rule, generally, in analogy *Page 980 
to the rule limiting the scope of review on appeal to questions raised below, a new trial will not be granted for matters pertaining to rulings, evidence, or occurrences at a trial, including erroneous conduct on the part of the court, counsel, or jury, unless timely and sufficient objections, requests, motions, or exceptions have been made and taken. Any grounds which might have been afforded by such matters are presumed to have been waived, except where such matters were unknown to applicant until after verdict and could not have been discovered by the exercise of reasonable diligence, and except in instances of fundamental errors which of themselves invalidate the trial."
McMullin v. State, 442 So.2d 155, 161 (Ala.Crim.App. 1983),quoting 24 C.J.S. Criminal Law § 1428 (1961). See also 24 C.J.S. Criminal Law § 1442 (1961). "Where no ruling of the court is invoked at nisi prius, there is nothing for the court to review and objection cannot be first made on motion for new trial in order to bring the matter before this court." Lucky v.State, 50 Ala. App. 324, 278 So.2d 772, 775 (1973). See alsoTrawick v. State, supra; Smith v. State, 393 So.2d 529
(Ala.Crim.App. 1981); Pierce v. State, 52 Ala. App. 422,293 So.2d 483 (1973), writ quashed, 292 Ala. 745, 293 So.2d 489
(1974).
We are of the opinion that Leverett's failure to adequately object to the prosecutor's initial question to Leverett's character witness about an FBI investigation of Leverett served as a failure to preserve this instance of alleged prosecutorial misconduct for review, either on the motion for new trial or on appeal. Leverett should have interposed a proper objection, requested curative instructions, or moved for a mistrial when
the defense's character witness was questioned. His mistrial motion made some time later was untimely as well as inadequate in failing to raise the specific ground now asserted. Likewise, Leverett failed to object to the introduction of the "mug shot" of the present Mrs. Leverett or to any reference to her as "State's Exhibit 47."
Leverett's first objection to these alleged instances, which is made by his motion for new trial, comes too late. This method of making an objection is little short of an effort to entrap the trial court into error and we will not use such objection as a basis for error. Jackson v. State, 260 Ala. 641,71 So.2d 825, 828 (1954); Lee v. State, 50 Ala. App. 713,282 So.2d 333, 336 (1973).
Because we consider any grounds which might have been afforded by these allegedly improper remarks and actions to have been waived, we must determine if these instances fall within the two exceptions to the general rule that a new trial will not be granted absent timely and sufficient objections. These two exceptions arise (1) in instances of newly discovered evidence, or (2) in instances of fundamental errors which invalidate the trial. Certainly the allegedly prejudicial behavior of the prosecuting attorney was known to Leverett prior to the jury's verdict. In addition, we find that the attorney's remarks and actions are not fundamental errors which invalidate the trial.
While this court has condemned the practice of a prosecuting attorney's asking a question which implies the existence of a factual predicate which the examiner knows he can not support by any evidence, e.g. Miller v. State, 439 So.2d 800
(Ala.Crim.App. 1983); Bezotte v. State, 358 So.2d 521
(Ala.Crim.App. 1978), we find that the prosecutor's questions in the instant case were not so grossly prejudicial as to require a new trial. "In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses`(o)ur task is to consider their impact in the context of this particular trial' and `not view the group of allegedly improper questions and comments in the abstract.' United States v.Davis, 546 F.2d 583, 593 (5th Cir. 1977)." Wysinger v. State,448 So.2d 435, 438 (Ala.Crim.App. 1983). We have no *Page 981 
doubt that any prejudice resulting from the prosecutor's improper reference to an FBI investigation of Leverett was eradicated by the FBI agent's testimony that, after only Mrs. Leverett and airport authorities were interviewed, the United States Attorney concluded that Mrs. Leverett's complaint was totally unsubstantiated and that no action was taken against Leverett. While it is probable that the prosecuting attorney knew that his insinuations were lacking in evidentiary proof, and while we strongly denounce such a tactic, we can not say that this conduct resulted in ineradicable prejudicial error that invalidated Leverett's trial.
Likewise, the introduction of a "mug shot" of the present Mrs. Leverett was not a fundamental error invalidating Leverett's trial. As stated by Presiding Judge Bowen inMcMillian v. State, 448 So.2d 463, 465 (Ala.Crim.App. 1984): "[T]he admission of a mug shot into evidence does not constitute plain error. We do not find that this alleged error `seriously threaten(s) the fairness or integrity of the judicial proceeding.'" (Citations omitted) Furthermore, we find that any prejudicial character of the prosecutor's references to Mrs. Leverett as "State's Exhibit 47" could have been eradicated by exclusion and rebuke by the trial court.
Accordingly, we find no clear abuse of the trial court's exercise of his discretion in his denial of Leverett's motion. In reviewing the denial of a motion for new trial, this court will indulge every presumption in favor of the correctness of the ruling of the trial judge. Smith, supra.
Our consideration of the issues raised on appeal convinces us that the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
TYSON, HARRIS and TAYLOR, JJ., concur.
BOWEN, J., concurs in result only.
[1] This section as it appeared in the Blue Paperback Pamphlet (adopted 1977, published 1978) is a recodification of § 13-11-2 (7), Code of Alabama (1975).
[2] Prewitt v. State, 460 So.2d 296 (Ala.Crim.App. 1984).