This is a capital murder case.
In 1977, Gilbert Franklin Beck was convicted of capital murder, Code 1975, § 13-11-2 (a)(2), in Etowah County, sentenced to die. His conviction was affirmed by the Alabama Court of Criminal Appeals, Beck v. State, 365 So.2d 985
(Ala.Crim.App. 1978), and by this Court, Ex parte Beck,365 So.2d 1006 (Ala. 1978); however, his conviction was overturned by the United States Supreme Court, Beck v. Alabama,447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), which held the "preclusion clause" of the Alabama Death Penalty Act to be unconstitutional. Based upon the Supreme Court's decision, this Court held that the legislature intended to pass a constitutional act, and that the preclusion clause could be severed from the Death Penalty Act. Based upon that reasoning, this Court reversed and remanded Beck's case to the Court of Criminal Appeals, Beck v. State, 396 So.2d 645 (Ala. 1981) [hereinafter cited as Beck II], which, in turn, reversed and remanded the case to the Circuit Court of Etowah County for new trial, Beck v. State, 396 So.2d 666 (Ala.Crim.App. 1981). Upon retrial, Beck was again convicted and sentenced to die. He again appealed to the Court of Criminal Appeals, claiming that his sentence of death should be vacated; the Court of Criminal Appeals agreed, and remanded his case to the trial court for a hearing to determine whether another retrial should be conducted based upon the holding in Witherspoon v. Illinois,391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Beck v.State, 485 So.2d 1196 (Ala.Crim.App. 1982). After receiving a record of that hearing, the Court of Criminal Appeals, holding that a "Witherspoon error" did occur at Beck's first retrial, reversed and remanded. Beck v. State, [MS. 7 Div. 909, March 1, 1983] (Ala.Crim.App. 1983). The State petitioned here for certiorari, which this Court granted, and reversed and remanded the cause to the Court of Criminal Appeals, holding that while Beck was entitled to a new sentencing hearing underWitherspoon, he was not entitled to a new determination of his guilt. Ex parte State, 485 So.2d 1201 (Ala. 1984). On remand, the Court of Criminal Appeals affirmed Beck's conviction but remanded to the trial court for resentencing. Beck v. State,485 So.2d 1203 (Ala.Crim.App. 1984). Before a resentencing proceeding could be held, however, Beck again petitioned here for certiorari, asking this Court to review the propriety of his conviction. The State agreed that this Court should review the issue of Beck's guilt, even though resentencing was still pending. This Court granted certiorari and heard oral arguments and has now reviewed the record.
The issues now before this Court are (1) whether an inculpatory statement made by Beck was incident to an illegal arrest and, therefore, improperly admitted; (2) whether *Page 1209 
the trial court erred in not dismissing all prospective jurors who knew of Beck's previous conviction arising out of the same occurrence; (3) whether the trial court's charge to the jury, particularly as to lesser included offenses, was incorrect and misleading, and; (4) whether this Court's decision in Beck II
was an unconstitutional usurpation of legislative authority. We will first address issue four and then proceed to address the remaining issues in order.
 I
Did this Court usurp legislative power in Beck v. State,396 So.2d 645? The answer is in the negative.
In Ex parte Clisby, 456 So.2d 95 (Ala. 1983), the defendant/petitioner raised this same argument now advanced by Beck, that by striking the preclusion clause from the Alabama Death Penalty Act in Beck II, this Court usurped the authority of the legislature. In Clisby, this Court, speaking through Justice Faulkner, held that all actions taken by the Court inBeck II were constitutional. Our opinion regarding the constitutionality of the statute under which Beck was convicted has not changed; therefore, Beck is not entitled to a reversal of his conviction on this ground.
 II
Petitioner argues that an inculpatory statement he made after his arrest should not have been admitted into evidence because it was the "first" of his illegal arrests. The trial court found that petitioner's arrest was not illegal, specifically stating the following:
 "An investigation by the Detective Division of the Etowah County Sheriff's Department led to the arrest of the Defendant, Gilbert Franklin Beck and another alleged accomplice, Roy Frank Clements. The investigating officer testified that a lead was obtained by a witness who described a pickup truck that he had seen at the scene earlier that afternoon. The officer arrived at the trailer of Beck, the Defendant, and observed a metal barrel which was smoldering. On the Defendant's shoes, there was [sic] spots of blood that was later identified scientifically as Type O, which was the same blood type as the victim. The Defendant, Beck was arrested and later made a voluntary statement to the Detective, that he had been at the victim's home with an accomplice, Roy. Frank Clements and was present at the time the victim was killed, but that he did not actually cut the victim's throat, but rather blamed the accomplice with the actual act."
The Court of Criminal Appeals affirmed the judgment of the trial court and, regarding the admission of the inculpatory statement, held:
 "While the investigating officers were conducting their preliminary investigation of the double homicide at the Malone home, Mr. Marlin Bartlett informed them that earlier that afternoon, he had seen appellant's blue pick-up truck parked in front of the Malone home. The officers determined that Bartlett had seen appellant's truck at the murder scene at the time the murders were committed. They drove to appellant's home to question the appellant. Outside appellant's home they observed appellant's blue pick-up truck and saw, in plain view, in the bed of the truck a pair of blood-spattered boots. They also noticed a smoldering trash barrel outside, behind appellant's home. Based on Bartlett's information, their own observations outside appellant's residence, and the reactions of the appellant and his wife when the officers informed them of the nature of the investigation, the officers placed the appellant under their custody."
Petitioner argues, in brief, that these findings of fact are "incorrect." He states:
 "Though the officers were told that defendant's pick-up truck had been seen at the Malone home earlier in the day, there is no testimony in the record to the effect that the officers determined the truck had been there at the time of the murders. *Page 1210 
 "When officers first went to question the defendant, they took him into custody. After transporting him to the jail they returned to his trailer. Only when they returned to the trailer, after they had placed defendant in custody, did they discover a pair of boots.
 "Just as importantly, it was not until after the police returned to defendant's residence to search (after he had been taken to police headquarters) that they discovered a smoldering trash barrel.
 "The sole reason defendant was arrested was stated by the officer who arrested him, detective Longshore. The question and answer are repeated here in full:
 "Q. On what basis did you have him confined in Etowah County Jail?
 "A. On the information that we had received from an informer that saw his truck there that afternoon. We arrived at approximately the time that the incident took place, and that's the way we picked him up."
The State counters by arguing that "[t]he pages to which reference is made are part of the defendant's first trial," and that "[a] portion of that transcript was included in the record of this case on appeal as a supplemental transcript on motion of the defendant; however, the pages to which the defendant refers were not included in the supplemental transcript and thus are not part of the record in this case. An appellate court generally cannot consider any matter outside of the record. Dates v. State, 282 Ala. 457, 212 So.2d 845 (1968)."
The State also argues that the record in the current case supports the findings made by the trial court and the Court of Criminal Appeals regarding the time when the boots were found. In brief, the State points out:
 "With regard to the existence of probable cause the defendant asserts that the arrest was based solely on the information that his truck was seen at the Malone home, where the crime occurred, on the afternoon of the robbery/murder. This assertion is not supported by the record. Deputy Don Longshore testified that the defendant was arrested at his trailer in the early evening of November 8, 1976, and that before the officers went to the trailer they observed in the bed of the defendant's pickup truck a pair of bloody boots. This is consistent with the trial court's findings. Thus two things connected the defendant with the crime at the time of his arrest, the information that his truck had been at the Malone house on the afternoon of the crime and the discovery in his truck of the boots."
The actual testimony of the investigating officer is as follows:
 "Q Let me show you State's Exhibit Nine here [boots]. Have you ever seen State's Exhibit Nine before?
"A Yes, sir, I have.
"Q Where did you see this?
 "A At the trailer of Gilbert Beck, in the back of a pickup truck.
 "Q Now, was that before you went in the trailer [to arrest Beck], or where?
"A It was before, yes, sir.
 "Q All right, sir. Whereabouts in the trailer was it? — I mean, in the back of the pickup truck, whereabouts?
"A In the back of the bed in the pickup truck.
"Q In open view?
"A Yes, sir.
"Q And did you get the boots at that time?
"A Yes, sir, I did."
The State also argues that "probable cause existed even if the only fact known to police at the time of the arrest was that the defendant's truck had been seen at the Malone home on the afternoon of the killing. To support its contention, the State argues:
 "As the United States Supreme Court has pointed out, `In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Illinois v. Gates, [462] U.S. [213] [103 S.Ct. 2317, 2328], *Page 1211 
76 L.Ed.2d [527] 544 (1983), quoting Brinegar v. United States, 338 U.S. 160, 175 [69 S.Ct. 1302, 1310, 93 L.Ed. 1879] (1949). The State submits that the fact that the Petitioner's car was at the scene of the robbery/murder on the afternoon that the crime occurred,[1] in an isolated and thinly populated rural area,[2] constitutes probable cause to believe that the Petitioner was involved in the crime.
[1] "Officer Longshore testified that it appeared the crime had taken place shortly before they arrived at 5:30 p.m.
[2] "Roy Malone, the victim, lived in the Shady Grove Community."
The State's ultimate position is that, assuming that the arrest was illegal because of a lack of probable cause, the confession should not be suppressed because there was no causal connection between the arrest and the confession.
We do not address the question of whether the confession was "tainted" under the principle announced in Taylor v. Alabama,457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982), because we find, as did the trial court and the Court of Criminal Appeals, that there was sufficient probable cause for the petitioner's arrest.
 III
Beck's next argument is that the trial court should have excused all those jurors who knew of his previous conviction. The record does show, as Beck argues, that twenty-eight of the prospective jurors knew of his previous conviction and that three of those veniremen eventually sat on the jury that convicted him. The Court of Criminal Appeals held:
 "After the completion of the voir dire examination of all of the prospective jurors, the appellant moved to dismiss all prospective jurors who had heard of his previous conviction on this same capital murder charge. Of the twenty-eight prospective jurors challenged by the appellant only fourteen were excused. Appellant insists that the trial court erred in refusing to dismiss the remaining fourteen jurors who had received at least some information about appellant's previous conviction. We disagree.
 "Prospective jurors who have heard of a defendant's previous conviction on the same charges need not be automatically excluded from the venire. Whisenhant v. State, [482] So.2d [1225] (Ala.Crim.App. 1982), affirmed in part, remanded with direction on other grounds, [482] So.2d [1241] (Ala. 1983); affirmed on remand, [482] So.2d [1246] (Ala.Crim.App. 1983); Giles v. State, [Ms. 6 Div. 86, January 10, 1984] (Ala.Crim.App. 1984). A prospective juror with knowledge of a previous conviction need not be dismissed for cause, if the trial court determines that the juror does not have a fixed opinion of appellant's guilt, but rather can lay aside any preconceived notions or opinions and render a verdict based solely upon the evidence presented in court. Murphy v. Florida, 421 U.S. 794 [95 S.Ct. 2031, 44 L.Ed.2d 589] (1975); Whisenhant v. State, supra; Giles v. State, supra. This determination is a matter left to the sound discretion of the trial court. See, Robinson v. State, 430 So.2d 883 (Ala.Crim.App. 1983), and cases therein cited.
 "As in Robinson, Whisenhant, and Giles, the trial court did not abuse its discretion in the instant case. Its decisions not to strike for cause the fourteen prospective jurors noted above were amply supported in the record. They were based upon thorough and sifting voir dire examinations of each prospective juror.[2] These voir dire examinations simply did not demonstrate that any of these fourteen jurors were biased or prejudiced against the appellant. The trial court properly applied the juror qualification standards outlined in Murphy v. Florida, supra, and followed in Whisenhant and Giles.
[2] "The complete voir dire examination of prospective jurors covered nearly 400 pages of the record on appeal."
The searching, sifting cross-examination of prospective jurors by two very able defense lawyers convinces us that the Court *Page 1212 
of Criminal Appeals correctly applied the law to the facts; therefore, its judgment is due to be affirmed on this issue. However, there is absolutely no evidence to indicate that any of these three jurors were in any way prejudiced against Beck because of the knowledge they possessed.
 IV
Finally, we agree with the Court of Criminal Appeals that the trial court's instructions to the jury, when viewed as a whole, were adequate to apprise the jurors of the elements of capital murder and its pertinent lesser included offenses.
The Court of Criminal Appeals, while finding the trial court's charge was "somewhat complex and confusing," nevertheless, found that the jury was not left in a state of confusion, and held:
 "As the state explains in brief, the complex portions of the trial court's oral charge were clarified by subsequent oral instructions requested by the appellant and by requested written charges. We have carefully reviewed the entire oral charge, including the supplemental oral instructions, and the requested written charges. When taken as a whole, the instructions to the jury at the close of the guilt-phase trial were adequate and not prejudicial to the appellant. See, Duncan v. State, 436 So.2d 883, 906 (Ala.Crim.App. 1983); see also, Van Antwerp v. State, 358 So.2d 782 (Ala.Crim.App.), cert. denied, 358 So.2d 791 (Ala. 1978); Harris v. State, 412 So.2d 1278 (Ala.Crim.App. 1982)."
After reviewing the court's oral instructions and requested written instructions which were given, we are convinced that prejudicial error has not been shown. The judgment of the Court of Criminal Appeals in this issue is due to be affirmed.
 V
Having considered each of the issues raised by Beck and finding none which warrants reversal, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
TORBERT, CJ., and FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.