**Paul F. LEVERETT,
Petitioner–Appellant,**

v.

**Larry SPEARS, Warden,
Respondent–Appellee.**

No. 88–7160.

United States Court of Appeals,
Eleventh Circuit.

July 19, 1989.

---

L. Dan Turberville, Birmingham, Ala., Irvin J. Langford, Mobile, Ala., for petitioner-appellant.

P. David Bjurberg, and William D. Little, Asst. Attys. Gen., Montgomery, Ala., for respondent-appellee.

Before JOHNSON and CLARK, Circuit Judges, and ZLOCH *, District Judge.

ZLOCH, District Judge:

The petitioner, Paul F. Leverett, was charged under an indictment with the capital offense of murder for hire of his wife, Elizabeth Smith Leverett. He was convicted on May 2, 1983 of the offense of murder and was sentenced to a term of life imprisonment. His conviction and sentence were upheld by the Alabama Court of Criminal Appeals on August 14, 1984. The Alabama Supreme Court denied a petition for a writ of certiorari on January 25, 1985.

Petitioner then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. Sec-

---

* Honorable William J. Zloch, U.S. District Judge for the Southern District of Florida, sitting by designation.

tion 2254 in the United States District Court for the Southern District of Alabama. The district court entered a Memorandum Opinion and Final Judgment on February 12, 1988 dismissing the Petition. This appeal ensued.

Petitioner asserts five grounds for habeas corpus relief. Petitioner's first three claims relate to the state trial court's instruction to the jury regarding a lesser included offense. First, petitioner alleges that the Alabama Supreme Court's opinion in *Beck v. State*, 396 So.2d 645 (Ala.1980), *affd.*, 485 So.2d 1207 (Ala.1985), excising the clause precluding instruction on a lesser included offense from Alabama's death penalty statute amounted to an *ex post facto* judicial construction of an act which denied petitioner due process of law. Petitioner's second and third claims assert that there was insufficient evidence to prove the petitioner guilty of the lesser included offense of murder beyond a reasonable doubt and that this claim should not be considered procedurally defaulted. Fourth, petitioner argues that the trial court erred in overruling petitioner's objections to hearsay testimony. Finally, petitioner claims that the testimony of an alleged instance of petitioner's bad character violated his due process rights. We affirm.

Elizabeth Smith Leverett was murdered on the afternoon of Friday, May 30, 1980. Petitioner discovered the body when he returned home after spending most of the day at various locations around town with his daughter, his son and his son's girlfriend.

At trial, the prosecution presented evidence that the petitioner had approached Bill McEvoy several months prior to the murder and had asked McEvoy if he could find someone to kill petitioner's wife. McEvoy used this opportunity to begin taking money from the petitioner by convincing petitioner that McEvoy was setting the petitioner up with a hit-man when, in fact, McEvoy was simply taking the petitioner's money. McEvoy described the "rip off" scheme in detail. McEvoy's testimony was corroborated by the testimony of Billy McLeod who participated in the scheme.

Evidence was presented that petitioner continued to press McEvoy about having petitioner's wife killed. McEvoy eventually set up a meeting between the petitioner and Thomas Prewitt. Prewitt agreed to kill the petitioner's wife for the sum of approximately $10,000.00. Prewitt testified that he and the petitioner agreed upon a date for the murder to occur and petitioner told Prewitt the approximate time of day that Elizabeth Leverett would return from the beauty parlor and be alone in the house.

Petitioner told McEvoy to tell Prewitt to take Mrs. Leverett's diamond ring to make it look like a burglary. McEvoy told Prewitt to get the ring and bring it to McEvoy as proof that Prewitt had committed the murder. Two days before the murder, petitioner met with Prewitt and gave him the keys to the Leverett house and the keys to Mrs. Leverett's car.

On the day of the murder, Prewitt entered the Leverett house with the key given to him by the petitioner and hid in the bedroom closet until Mrs. Leverett got home. Prewitt then shot Elizabeth Leverett twice and slit her throat. After hearing a knock at the front door, Prewitt took Mrs. Leverett's diamond ring and left. Prewitt sold the ring to his friend, Hilton Robinson, who operated a pawnshop business.

Approximately two weeks later, Prewitt testified that he had a conversation with the petitioner about where he could pick up the balance of the money owed. Arrangements were made for petitioner to take the money to the shop run by Robinson. A "for sale" sign was placed in the window of a pickup truck in front of Robinson's shop. Prewitt testified that petitioner was supposed to drive by, get out, look at the truck and leave the money under the driver's side of the seat in the truck. Prewitt planned to come by later and pick up the money.

Robinson testified that petitioner and Prewitt came to his shop on the same day. He identified petitioner as the man who came and looked at his truck on the date that Prewitt came to his shop. Robinson observed Prewitt take something from the

truck after petitioner had left. Prewitt then came into the shop and took an envelope out of his shirt containing a stack of one-hundred dollar bills. Prewitt told Robinson that the man Robinson saw looking at the truck was the man for whom he had done the job.

At trial, petitioner testified that he had been experiencing financial difficulties. He testified that there were times when his relationship with his wife was rocky and that Mrs. Leverett's standard of living was quite expensive. Petitioner denied knowing or meeting Prewitt and denied any participation in Elizabeth Leverett's murder.

## I. JURY INSTRUCTION

Petitioner contends that the state trial court erroneously instructed the jury on the offense of murder, a lesser included offense to the capital offense of murder for hire. We will address the petitioner's claims relating to the allegedly improper jury instruction in two categories.

### Ex Post Facto Application of Laws

Petitioner was charged under Alabama's 1975 capital murder statute, codified as *ALA.CODE*, Section 13A–5–30 *et seq.* (1975) (repealed), with the capital offense of murder for pecuniary gain or "pursuant to a contract or for hire." *Id.* at Section 13A–5–31(a)(7). The statute as written precluded lesser included offenses. *Id.* at Section 13A–5–31(a). In 1980, the Alabama Supreme Court reinterpreted this statute and severed the preclusion clause thus permitting the instruction of lesser included offenses supported by the evidence. *Beck*, 396 So.2d at 656 (citing *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)). Petitioner argues that application of *Beck* to the case *sub judice* constitutes an unconstitutional *ex post facto* application of the laws and that the lesser included offense of murder, of which petitioner was convicted, should not have been given. Respondent argues that this argument is without merit because it is procedurally barred by the invited error doctrine and is nevertheless without merit under *Jordan v. Watkins*, 681 F.2d 1067, 1079 (5th Cir.),

*reh'g denied,* 688 F.2d 395 (5th Cir.1982), and *Dobbert v. State of Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344, *reh'g denied*, 434 U.S. 882, 98 S.Ct. 246, 54 L.Ed.2d 166 (1977), *cert. denied*, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980), which held that procedural and ameliorative changes do not violate the *ex post facto* clause as applied to a crime committed before the adoption of a statute. *See also Ex Parte Potts*, 426 So. 2d 896, 900 (Ala.1983) (no *ex post facto* violation for applying the procedures set forth in *Beck* to appellant's trial).

■ Without reaching the issue of whether the application of *Beck* to this case would be constitutionally impermissible as an *ex post facto* law, we find that petitioner clearly invited the procedure which he now asserts to be reversible error. Petitioner both argued for and submitted the written jury instructions stating that murder is a lesser included offense, and failed to object to the court's charge to the jury. *See Leverett v. State*, 462 So.2d 972, 976–77 (Ala.Crim.App.1984). Therefore, the doctrine of invited error applies to preclude petitioner from complaining of this error on appeal. *Francois v. Wainwright*, 741 F.2d 1275, 1282 (11th Cir.1984); *Jelks v. State*, 411 So.2d 844, 848 (Ala.Crim.App.1981) (citations omitted).

### No Rational Basis for Murder Conviction

We next consider petitioner's argument that the murder charge should have nevertheless not been given because there lacked a sufficient factual basis for it. Petitioner argues that there was no evidence apart from the state's evidence that Petitioner hired a hit-man, which relates solely to the crime of murder for hire, which would have supported the non-capital offense of murder. Under the Alabama statute, the jury must be instructed on each lesser-included offense where "there is a rational basis for a verdict convicting the defendant of the included offense." *ALA.CODE*, Section 13A–1–9(b); *see also Leverett*, 462 So.2d at 975–76.

■ The evidence in its entirety reasonably supports the theory that petitioner intended to, and aided and abetted in the cause of Mrs. Leverett's death. *See ALA. CODE*, Section 13A–6–2(a). Therefore, the trial court properly found that the instruction on the lesser included non-capital offense of murder was appropriate under the facts.

## II. HEARSAY TESTIMONY

Petitioner alleges in his fourth claim that the trial court erred in overruling the petitioner's objections to hearsay testimony which denied the petitioner due process of law. At trial, prosecution witness Prewitt testified that the final payment received for the murder of the petitioner's wife was $1,000.00 greater than the agreed price. Prewitt testified that he called co-conspirator McEvoy to ask about the discrepancy. McEvoy told Prewitt that the extra money "was for a job well done." Petitioner argues that the erroneous admission of this statement was not harmless error and, in fact, amounted to a violation of due process. This claim is without merit.

■ In reviewing habeas corpus petitions, federal courts are not empowered to correct erroneous evidentiary rulings of state trial courts. *Boykins v. Wainwright*, 737 F.2d 1539, 1543 (11th Cir.1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). Habeas review of an evidentiary ruling of a trial judge is limited to ascertaining whether the error is of such a magnitude as to render the trial fundamentally unfair and thus violative of due process. *DeBenedictis v. Wainwright*, 674 F.2d 841, 843 (11th Cir.1982). The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is "material in the sense of a crucial, critical, highly significant factor." *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir.1989) (citation omitted); *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976).

■ We find that the statement complained of by the petitioner does not rise to a level of prejudice which rendered the petitioner's trial fundamentally unfair. The statement relates to the capital offense of murder for hire. Petitioner was not convicted of the aggravated offense of murder for hire but was convicted of murder. Therefore, no prejudice resulted from the introduction of this statement when in fact the jury did not convict petitioner of the charge to which the statement relates. Further, we do not find the statement to be highly significant or in any way material when considered in the context of the other evidence introduced at trial.

The prosecution introduced substantial evidence in support of its theory that a conspiracy to kill Mrs. Leverett pursuant to a contract for hire existed between petitioner and Prewitt. Prewitt testified that he had met with the petitioner in the parking lot of the Sun–Ray Food Store, in April of 1980 and that he asked the petitioner "point blank" what the petitioner wanted. Prewitt testified that the petitioner told him that he wanted Prewitt to kill his wife and that they then discussed the possible times for the murder to be committed as well as the amount of money necessary for Prewitt to commit the murder. Prewitt then admitted to killing Mrs. Leverett on the date agreed upon with the petitioner after being given keys to the Leverett house by the petitioner. Prewitt testified that he received a total of approximately $11,000.00 from the petitioner for committing the murder.

Another witness, Bill McEvoy, testified that the petitioner had approached him and asked if McEvoy could find someone to kill petitioner's wife. Petitioner told McEvoy that he had "lived in hell the last couple of years and he just couldn't take it any more." McEvoy then arranged for the petitioner to meet with Prewitt.

This testimony alone could have justified a verdict of guilty for the capital offense of murder for hire. In considering the evidence in its entirety, there was more than sufficient evidence to support a finding of guilty for the offense of murder for hire notwithstanding the statement complained

of by the petitioner. The fact that the jury did not convict the petitioner of this capital offense but chose to convict him of the non-capital offense demonstrates the lack of prejudice to the petitioner. Therefore, in light of the substantial nature of the other evidence establishing petitioner's guilt, we find that any possible constitutional error is rendered harmless beyond a reasonable doubt. *See Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### III. CHARACTER EVIDENCE

Finally, petitioner alleges that the state trial court improperly allowed the state to prove a specific instance of the petitioner's bad character through a rebuttal witness. During the cross-examination of character witness, James Gable, the prosecutor asked the witness the following question: "Did you know that on May the 2nd of 1975, excuse me—that on or about April 28, 1975 the F.B.I. investigated Paul Leverett for threatening to blow up an airplane upon which Elizabeth Leverett was supposed to be a passenger?" No objection was made by defense counsel. The petitioner then testified and was questioned about this incident. Petitioner denied any attempt to blow up a plane or that he had been contacted or questioned by an FBI agent about such an incident.

The state then called Roy Eveland, a retired FBI agent, as a rebuttal witness. Eveland testified that he had investigated an alleged bomb threat at Bates Field Municipal Airport in 1975. The witness recalled that the name of the passenger involved with the threat was Elizabeth Leverett. Eveland then testified that he had never interrogated Paul Leverett and that the United States Attorney had declined prosecution of the matter.

Petitioner's only objection at the time of the testimony was an objection based on hearsay to the question: "Do you know how that bomb threat got started or the investigation got started?" Although the objection was overruled, the witness never answered the question. Petitioner con-

tends that the admission of this rebuttal testimony denied the petitioner due process of law. We reject petitioner's argument.

We turn first to the petitioner's failure to challenge the rebuttal testimony in the state trial court except as noted above. Alabama law clearly requires that a criminal defendant make an objection to the admission of certain evidence as soon as the ground for the objection becomes apparent. *Watson v. State*, 439 So.2d 762, 769 (Ala.Crim.App.1983). Alabama law also provides that when one side allows the other side to introduce allegedly erroneous testimony without objection and without making a motion to exclude such testimony, the former party waives any alleged error made by the trial court in allowing the testimony. *See Thomas v. State*, 440 So.2d 1216, 1218 (Ala.Crim.App.1983); *Capps v. State*, 424 So.2d 681, 683 (Ala. Crim.App.1982). It is clear that the petitioner failed to make a timely challenge at the trial level and that this failure constituted procedural default under Alabama law. *Leverett*, 462 So.2d at 979.

Federal habeas review is barred where the petitioner has committed a procedural default that prevents state court review of his objection unless the petitioner can overcome this bar by showing cause for and actual prejudice from the default. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Riley v. Wainwright*, 778 F.2d 1544, 1551–52 (11th Cir.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 240, 93 L.Ed.2d 165 (1986). Therefore, our inquiry turns to whether the petitioner can overcome this procedural bar by demonstrating sufficient cause and actual prejudice. The existence of sufficient cause to overcome a procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In applying this standard, the petitioner has failed to make a sufficient showing of cause. We note that the peti-

tioner has advanced no explanation whatsoever for his failure to object or move to exclude the complained of testimony at trial.

Having found that the petitioner has failed to satisfy the cause requirement for removing the bar to procedural default, we need not address the issue of prejudice. *See Aldrich v. Wainwright*, 777 F.2d 630, 631 (11th Cir.1985), *cert. denied*, 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 297 (1986).

The judgment of the district court is AFFIRMED.