Lee Wayne PATTERSON, Petitioner,

v.

John DAHM, Respondent.

No. CV89–L–342.

United States District Court, D. Nebraska.

April 23, 1991.

James Michael Edgar, Lincoln, Neb., for petitioner.

Robert M. Spire, Atty. Gen., Sharon Lindgren, Asst. Atty. Gen., and Jill Gradwohl Schroeder, Lincoln, Neb., for respondent.

## MEMORANDUM AND ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

URBOM, Senior District Judge.

Having reviewed Magistrate Judge David L. Piester's report and recommendation of September 10, 1990, filing 28, the parties' briefs on the matter, and the relevant materials and opinions from the state courts, I find that I am in agreement with the magistrate judge's well-reasoned and supported analysis.

IT IS ORDERED that the petition for a writ of habeas corpus, filing 2, be granted, unless the petitioner is granted a new trial within 60 days after the judgment becomes final.

## REPORT AND RECOMMENDATION

DAVID L. PIESTER, United States Magistrate Judge.

Pending before the court is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, from Lee Wayne Patterson, an inmate at the Lincoln Correctional Center. The parties have submitted the state court records and their respective briefs on the merits of petitioner's claims, and the matter is now ripe for review.

Petitioner was initially charged with murder in the first degree in the shooting death of Brian Crittenden. On November 18, 1980 the petitioner was convicted in the District Court of Hall County of conspiracy to commit murder. Petitioner was sentenced to sixteen years, eight months to fifty years imprisonment. On direct appeal, which challenged only the propriety of his sentence, the Nebraska Supreme Court affirmed without opinion. *State v. Patterson*, 209 Neb. xx (1981). The petitioner thereafter sought post-conviction relief in the district court. The district court denied relief on the motion and the Nebraska Supreme Court, with one judge dissent-

ing, affirmed. *State v. Patterson*, 232 Neb. 304, 440 N.W.2d 242 (1989).

A brief recitation of the facts surrounding the petitioner's conviction will be of assistance in understanding the petitioner's claims. In February of 1980 the petitioner was living in a house in Grand Island, Nebraska with his wife Debra Patterson. Also residing at their home at that time were two brothers, Phillip and Michael McNitt. At some point in the early morning of February 1, 1980 the victim, Brian Crittenden, arrived at the Patterson residence, according to the testimony to engage in a drug transaction. Crittenden, who had been driving most of the night, at some point went into the basement of the home and went to sleep.

The petitioner and Mike McNitt gave two competing versions of the events which followed. McNitt testified that when Patterson awoke and was told that Crittenden was in the house asleep, the petitioner suggested that they kill Crittenden and sell his drugs to make rent money. According to McNitt, Patterson eventually went into the basement with a rifle and shot Crittenden while he slept.

The petitioner testified at trial and maintained that in fact McNitt suggested that Crittenden be killed and at some time later McNitt went into the basement with Patterson's rifle and shot the victim. While each of the two asserted that the other took the lead in later disposing of the body, which was placed in the trunk of Crittenden's own car and driven to Lincoln to be abandoned, each admitted that they, along with Phillip McNitt, assisted in disposal of Crittenden's body.

Phillip McNitt asserted his Fifth Amendment right to remain silent at the petitioner's trial. Debra Patterson, who was apparently not involved in the killing, essentially corroborated the testimony of her husband.

The jury was informed that Michael McNitt was testifying at the petitioner's trial as part of a plea bargain where, in exchange for that testimony, his first degree murder charge would be reduced to conspiracy to commit murder.

The petitioner now raises three claims challenging his conviction. First, he contends that his counsel at trial was ineffective in several respects, as follows:

a. His trial attorneys requested a jury instruction on conspiracy to commit murder as a "lesser-included" offense of first-degree murder, and that instruction was accepted and given by the court;

b. His trial attorneys persuaded him to withdraw a motion for new trial filed subsequent to his conviction upon the erroneous advice that the granting of such motion would subject him to a second prosecution on the charge of first degree murder; and

c. His trial attorneys failed to perfect and prosecute a meaningful appeal on the mistaken belief that the withdrawal of the motion for a new trial waived his right to appeal any issue except "excessive sentence."

Second, petitioner asserts that the trial court erred in instructing the jury that "conspiracy to commit murder" was a lesser-included offense of first degree murder. Finally, the petitioner contends that the trial court erred in permitting a witness to testify who had been hypnotized to aid in his recall of certain facts.

Petitioner has abandoned his third claim regarding the hypnotized witness based on an admission that the claim was not properly presented to the state courts for review, and that "no cause and prejudice can be shown from this record" as required by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The respondent does not dispute that petitioner's claim 1(a) and 1(b) have been fully and fairly presented to the state courts, and thus are properly exhausted for purposes of this habeas action. Respondent does argue that all other claims of the petitioner were not properly presented to the state courts and, the petitioner having failed to show "cause for and prejudice from" such procedural default, these claims are barred.

Contrary to the argument of respondent, claim 1(c) was raised in petitioner's state post-conviction action. As relevant to the issue of ineffectiveness of counsel for failure to prosecute a meaningful direct appeal, the district court found that the "doctrine of invited error would have precluded a successful direct appeal," and, found, in general, none of the actions of trial counsel amounted to ineffective assistance of counsel. However, this specific ruling was not assigned or discussed as error in petitioner's brief on appeal from his post-conviction action to the Nebraska Supreme Court, and, for that reason, was not addressed by that court. Clearly the petitioner could have presented this issue on appeal from denial of post-conviction relief and chose not to do so. Such a claim, having not been presented on direct appeal, may not now be raised an any subsequent state court action, *State v. Meis*, 223 Neb. 935, 936–37, 395 N.W.2d 509 (1986) and, thus, is deemed exhausted.

Having failed to raise claim 1(c) on appeal in state court, the petitioner may not bring that claim in this court absent a showing of "cause" for and "prejudice" from that procedural default. *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Wainwright v. Sykes*, *supra*. Petitioner has made no argument or showing as to "cause for" or "prejudice from" his default on this claim, thus this court cannot address that claim on its merits.

Claim 2 is essentially a direct due process challenge to the action of the trial court in giving the "conspiracy to commit murder" instruction as a lesser-included offense of first degree murder. The respondent argues that this claim was raised before the state courts only as part of petitioner's ineffective assistance claim and not as a direct challenge to the conduct of the court in giving the instruction. Respondent's argument is well taken. My reading of the record herein indicates that this claim has not been presented to the state courts in either petitioner's direct appeal or in his post-conviction action. Indeed, the petitioner would probably have been barred from raising this claim in any state court by the doctrine of "invited error" since the instruction was offered by counsel for the

petitioner, and, obviously, not objected to when given. Nebraska law provides that "ordinarily, a party will not be permitted to benefit from an error which [he] has invited." *State v. Blue*, 223 Neb. 379, 382, 391 N.W.2d 102 (1986). While any error on the part of counsel on offering the instruction may be the basis for a later ineffective assistance claim challenging this instruction, (see discussion below), a direct challenge to the giving of the instruction would be barred by counsels' actions.

Despite this default on claim 2, there is no presently available state court remedy on this claim, and it therefore has been exhausted. As with claim 1(c) discussed above, in order for petitioner to raise this claim in this court *Sykes* requires that the petitioner show "cause for" and "prejudice from" the state court default. Although not directly argued by the petitioner, in this case appropriate "cause" for such a default may be a successful claim of ineffective assistance of counsel, such as that asserted in claim 1(a). *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). As will be more fully set forth below, I conclude that the petition for habeas corpus relief should be granted on the basis of claim 1(a). While my conclusion would allow petitioner's second claim to be considered on its merits in this court, I find such consideration unnecessary given my recommendation that relief be granted as to claim 1(a). Therefore claim 2 will not be addressed on its merits in this report.

■ The respondent initially argues that the doctrine of "invited error" bars the petitioner from raising his ineffective assistance claim based on the "lesser-included" jury instruction in a habeas action. In essence the respondent asserts that the actions of petitioner's trial counsel in proffering the "conspiracy to commit murder" instruction must be imputed to the petitioner, particularly since he was present at the jury instruction conference when the "lesser-included" instruction was requested.

The petitioner responds that he was merely relying on advice of counsel, is unversed in the law, and did not realize that the instruction was erroneous. Further, he asserts that claim 1(a) is one of ineffective assistance of counsel for offering the instruction in the first instance, not a claim directly challenging the giving of the instruction. I find the arguments of petitioner well taken.

I cannot agree that the "invited error" doctrine bars petitioner from bringing this ineffective assistance of counsel claim. The crucial inquiry is whether the actions of counsel in this case may be imputed to the petitioner when his claim alleges that those very actions fell outside "the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). That question must be answered in the negative.

First, the choice of proper jury instructions for trial has long been viewed as a decision requiring legal knowledge and skill, and as a decision traditionally made by counsel for an accused defendant. The Eighth Circuit, in addressing the question of the preclusive effect of a failure to comply with a state's contemporaneous objection rule, has in the past based its determination of the applicable standard for overcoming such a default on distinctions between waivers which were a result of decisions traditionally made by the defendant himself or decisions traditionally made by counsel. When addressing the question of whether the "cause and prejudice" standard of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), or the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), would apply to a petitioner's noncompliance with state rules of procedure, the Eighth Circuit has generally held that the "deliberate bypass" standard of *Fay* would apply in cases where the "alleged waiver of an objection was the result of a defendant's own decision," and includes in that category of decisions matters such as whether to plead guilty, whether to waive a trial by jury, whether to appeal, and the like. *Graham v. Mabry*, 645 F.2d 603, 606 (8th Cir.1981). On the other hand, where the alleged waiver relates to decisions regarding trial tactics or matters dur-

ing trial which require the exercise of legal judgments, decisions which are traditionally made by counsel, the "cause and prejudice" standard was applied. *Id.*

The relevance of the distinction noted in *Graham* is clear. There are some decisions made with respect to the conduct of a criminal case which are traditionally assumed to have been made by trial counsel because those decisions, relating to trial tactics, require the expertise and legal wisdom of an experienced professional. One such decision is whether to object to jury instructions. *Graham v. Mabry,* 645 F.2d at 607, *citing, Dietz v. Solem,* 640 F.2d 126 (8th Cir.1981). For purposes of this case, then, it is appropriate to conclude that petitioner's counsel bore the responsibility for the decision as to which jury instructions would be proper at petitioner's trial.

Undoubtedly, the actions of trial counsel are generally imputed to the defendant, and the doctrine of "invited error" has in fact been held to bar, in a habeas action, assertion of challenges to the giving of lesser-included jury instructions "when [p]etitioner both argued for and submitted the written jury instructions ... and failed to object to the court's charge to the jury." *Leverett v. Spears,* 877 F.2d 921 (11th Cir. 1989).

This case, however, is clearly distinguishable from cases such as *Leverett.* Here the petitioner's only avenue to challenge the actions of his attorney is a claim that the offering of the "conspiracy to commit murder" jury instruction amounts to ineffective assistance of counsel. While the petitioner must, as part of his ineffective assistance claim, show that he was prejudiced by the giving of the instruction, his challenge is not a direct challenge to the giving of that instruction, and therefore he cannot be said to have waived his right to assert the ineffective assistance claim in federal court.

In addition, even if I were to assume that the "invited error" doctrine is the equivalent of procedural default at the trial court level, such a conclusion would not leave the petitioner without a remedy in this court. In accordance with *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), "procedural default does not bar consideration of a federal claim on either direct appeal or habeas review unless the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." 109 S.Ct. at 1043. The petitioner's ineffective assistance of counsel claim was properly raised on appeal to the Nebraska Supreme Court following petitioner's state post-conviction action, and the claim was decided on its merits; it was not disposed of on the basis of a procedural default, i.e., invited error, at the trial court level. That claim may, therefore, be raised in this action.

Claims of ineffective assistance of counsel are governed by the standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) which sets forth the following two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064.

To prevail on an ineffective assistance of counsel claim under *Strickland,* a petitioner must show "(1) that his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) that he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different." *Lawrence v. Lockhart,* 767 F.2d 449, 450 (8th Cir.1985). A reasonable probability is "a probability sufficient to undermine confi-

dence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

I first point out, contrary to the argument of respondent, that "a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated in 28 U.S.C. § 2254(d)." *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. "Ineffectiveness is not a question of 'basic, primary, or historical fac[t],' *Townsend v. Sain*, 372 U.S. 293, 309, n. 6 [83 S.Ct. 745, 755, n. 6, 9 L.Ed.2d 770] (1963)." *Id.*

> An ineffective assistance of counsel claims presents a mixed question of law and fact. *Eldridge v. Adkins*, 665 F.2d 228, 236 n. 5 (8th Cir.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982). Therefore, the presumption of correctness accorded the factual determinations of the state court ... applies only to the historical facts underlying the attorney's performance but not the ultimate conclusion as to whether or not effective assistance has been rendered. (Citations omitted).

*Kellogg v. Scurr*, 741 F.2d 1099, 1101 (8th Cir.1984).

█ The petitioner argues that trial counsel's actions in seeking the instruction on the "lesser-included" offense of conspiracy to commit murder effectively amounted to his own counsel charging him with a crime which was not included in the information filed against him by the state, because in fact conspiracy to commit murder is not a lesser-included offense of first degree murder, and thus should not have been included in the step-instruction given to the jury. In essence, the petitioner argues, the actions of his trial counsel created a fatal variance between the government's information and the ultimate charge to the jury.

In order to succeed on his claim petitioner must first establish that "conspiracy to commit murder," is not, as a matter of law, a "lesser-included offense" of first degree murder. The respondent does not dispute the petitioner's argument that indeed conspiracy to commit murder is not such a lesser-included offense. Nor did the Hall County District Court or the majority opinion of the Nebraska Supreme Court contest the petitioner's position. The dissent in *Patterson* aptly set forth the applicable Nebraska law on this issue, and forcefully noted the "obvious:" "conspiracy to commit murder is not a lesser-included offense subsumed within the statutory definition of murder in the first degree." *Patterson*, 232 Neb. at 310, 440 N.W.2d 242 (Caporale, J., dissenting). The undisputed analysis was set forth as follows:

> A lesser-included offense is one which is necessarily established by proof of the greater offense. *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989); *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989); *State v. Baker*, 231 Neb. 144, 435 N.W.2d 202 (1989). To be a lesser-included offense, the elements of the crime must be such that in committing the greater offense, one at the same time necessarily commits the lesser offense. *State v. Olsan, supra; State v. Baker, supra.*

> The determination of whether an offense is a lesser-included one is controlled by the elements of the crimes as set forth in the statutes and not by the facts presented in the particular case at issue. *State v. Donhauser*, 231 Neb. 114, 435 N.W.2d 186 (1989). The fact that the elements of the lesser-included offense may be present in a case of the greater offense is not sufficient to invoke the lesser-included offense instruction if it is possible to commit the greater offense without committing the lesser offense. *State v. Donhauser, supra.*

> Section 28–303 establishes the elements of the crime of murder in the first degree as follows:

> > A person commits murder in the first if he kills another person (1) purposely and with deliberate malice, or (2) in the perpetration of or attempt to perpetrate any sexual assault in the first degree, arson, robbery, kidnapping, hijacking of any public or private means of transportation, or burglary, or (3) by administering poison or causing the same to be done; or if by

willful and corrupt perjury or suborna-
tion of the same he purposely procures
the conviction and execution of any
innocent person.

Neb.Rev.Stat. § 28–202 (Reissue 1985)
enumerates the elements of conspiracy
thusly:

(1) A person shall be guilty of crimi-
nal conspiracy if, with intent to pro-
mote or facilitate the commission of a
felony:

(a) He agrees with one or more per-
sons that they or one or more of them
shall engage in or solicit the conduct or
shall cause or solicit the result speci-
fied by the definition of the offense;
and

(b) He and another person with
whom he conspired commits an overt
act in pursuance of the conspiracy.

It is abundantly clear, therefore, that one
may kill another with the mental state,
attendant circumstances, or in the man-
ner proscribed by § 28–303 without con-
spiring with another to do so. Similarly,
one may conspire with another to commit
a killing which, if consummated, might
itself rise to the level of first degree
murder; even in the absence of the con-
summation of such a killing, however,
such an agreement plus an overt act in
furtherance of the killing would be suffi-
cient to make out the crime of conspiracy
described in § 28–202. Obviously, then,
conspiracy to commit murder is not a
lesser-included offense subsumed within
the statutory definition of murder in the
first degree, nor is murder in the first
degree a lesser-included offense sub-
sumed within the statutory definition of
conspiracy to commit murder. Thus,
there can be no question but that the

questioned portion of the instruction at
issue is without legal basis.

*State v. Patterson*, 232 Neb. at 309–11, 440
N.W.2d 242.

Although no Nebraska case has been
found specifically so holding, it is not dis-
puted here that conspiracy to commit mur-
der is not a lesser-included offense of first
degree murder under Nebraska law.[1] In
addition, it is also not disputed that the
rules of law applicable to lesser-included
offenses were, as noted by the dissent in
*Patterson*, in existence at the time of the
petitioner's trial "and remain substantially
unchanged today." *Id.* at 311, 440 N.W.2d
242, *citing, State v. Tamburano*, 201 Neb.
703, 705, 271 N.W.2d 472, 474 (1978) ("A
lesser offense is one which must be com-
mitted if the greater is committed or, put
slightly different[ly], is one which is fully
embraced in the higher offense"); *State v.
Comer*, 199 Neb. 762, 763, 261 N.W.2d 374,
375 (1978) ("A lesser-included offense is
one which includes some of the elements of
the crime charged without the addition of
any element irrelevant to the crime
charged"). I have no doubt that if square-
ly confronted with the issue, the Nebraska
Supreme Court would adhere to these prin-
ciples and find the two offenses entirely
separate.

The respondent contends that trial coun-
sel's decision to seek the "lesser-included"
conspiracy instruction was a reasonable
tactical decision which was made in an at-
tempt to keep his client from being convict-
ed of first-degree murder and face the pos-
sibility of a death sentence, a tactic which
in fact worked to petitioner's advantage,
given that he was ultimately convicted of
the conspiracy charge and acquitted of
both first and second degree murder.[2]

---

1. The disposition of petitioner's appeals made it
unnecessary for the majority to confront the
issue directly, although it did state, "[a]lthough
it may be, as Patterson argues, that conspiracy
to commit murder is not a lesser-included of-
fense of murder in the first degree and that he
thus was not entitled to an instruction on con-
spiracy to commit murder, it is nevertheless
also true that ineffective assistance of counsel is
not synonymous with error by counsel." *Id.* at
308, 440 N.W.2d 242.

2. One of petitioner's two trial counsel testified
at the hearing on the state post-conviction mo-
tion that they offered the conspiracy instruction
to give the jury options over and above the first
degree murder option.

> I guess it was our opinion that we felt that
> there was sufficient evidence on murder one,
> or murder two that the jury could convict him
> if they were going to follow jury instructions.
> Basically, by requesting the conspiracy to
> commit murder instruction we were hoping
> for what I refer to—and I think is known as—

■ The respondent argues, and correctly so, that deliberate tactical choices made by counsel generally do not rise to the level of ineffective assistance of counsel merely because the chosen tactic proves to be ill-advised or turns out to be a wrong decision. *Robinson v. United States,* 448 F.2d 1255 (8th Cir.1971). Ineffective trial strategy is not the equivalent of ineffective assistance of counsel. *Drake v. Wyrick,* 640 F.2d 912, 915 (8th Cir.1981).

> Due process does not require errorless counsel. It does not require the absence of mistakes in judgment at trial, when viewed in hindsight. Due process embodies the notion of fundamental fairness. [A] [p]etitioner ... [must] establish, on the record as a whole, ... [a] denial of fundamental fairness or lack of reasonably competent and effective assistance of counsel.

*Id.* at 916.

On the other hand, "the label of 'trial strategy' does not automatically immunize an attorney's performance from sixth amendment challenges." *Kellogg v. Scurr,* 741 F.2d 1099, 1102 (8th Cir.1984). Indeed, an attorney may conclude that it is "sound trial strategy" to not participate at all in the trial of his client, with the exception of his presence; yet it is clear that such a course of action denies a defendant "professionally competent assistance" and such a tactic is not the "exercise of reasonable professional judgment." *Martin v. Rose,* 744 F.2d 1245, 1250 (6th Cir.1984) (defendant denied effective assistance of counsel where defense attorney refused to actively participate at trial based on the mistaken belief that participation would either waive pretrial motions or render their denial harmless error).

My citation to *Martin v. Rose, supra* by no means is intended to suggest that petitioner's trial counsel engaged in such egregious inaction as that found in that case. Indeed, here the record suggests that trial counsel worked diligently for their client throughout the trial, and waged an admirable battle against the possibility of a sentence of death. I cite the *Martin* case only to illustrate that at some point along that tenuous and ill-defined line of "reasonable professional conduct," an attorney may cross into the realm of "unreasonable" even if he or she is acting with the best of intentions in a case involving the worst of circumstances, i.e., where the client faces the potential of a sentence of death. I am constrained to conclude that this is such a case.

In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), a decision handed down at the same time as *Strickland*

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." *Anders v. California,* 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967). The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing.

*Id.* at 656, 104 S.Ct. at 2045. The Court in *Strickland* urged courts, in analyzing the effectiveness of counsel, to "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to *make the adversarial testing process work in the particular case.*" 466 U.S. at 690, 104 S.Ct. at 2066.

In this case, while counsels' subjective intent, to save their client from the possibility of the death penalty, was certainly admirable, an objective assessment of their actions reveals that at the time they made the decision to submit an instruction on conspiracy to commit murder, a charge which in accordance with Nebraska law is not a lesser-included offense of first degree murder, they stepped outside the role of

jury nullification. We were hoping the jury would disregard the murder one, murder two instruction based on the notion that—you know, Mr. McNitt was sitting in the back of the courtroom, testifying under benefit of plea negotiations, and so far as we were concerned, and hopefully the jury, that everyone was involved in this thing and equally culpable; that there was a plan to do this to this man.

(Post-conviction Bill of Exceptions at 19:11–22).

advocates for the petitioner and assumed the role of prosecutor.

An effective attorney "must play the role of an active advocate, rather than a mere friend of the court." *Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985); *Cronic,* 466 U.S. at 656, 104 S.Ct. at 2045; *Anders v. California,* 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

*Osborn v. Shillinger,* 861 F.2d 612, 624 (10th Cir.1988). Here I must conclude that the actions of petitioner's attorneys, even if it could be said to have been a stroke of genius, effectively charged the petitioner with a crime which the prosecution chose, for whatever reason, not to bring in the original information. It was at that point that counsel ceased being an effective advocate for their client, and their actions "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

In every criminal case it is the function of the prosecuting attorney to determine the potential charges which are justified from the facts and evidence arising from a particular case. The essence of the adversarial process is that a state must give a defendant notice of the charges against him or her in order that the defendant may properly prepare a defense, *Cole v. Arkansas,* 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), and the state must then prove, beyond a reasonable doubt, that the defendant committed the acts charged. Here counsel for the petitioner effectively amended the state's information against the petitioner to include a charge which the state chose not to bring in the first instance. The actions of petitioner's counsel thus created a variance between the information charging the petitioner and the ultimate instructions to the jury, by including an additional, uncharged offense.

In *Ricalday v. Procunier,* 736 F.2d 203 (5th Cir.1984) the Fifth Circuit held that defense counsel's failure to object to a variance between the indictment and the jury instructions which added an uncharged crime constituted unprofessional representation by counsel. In that case the defendant had been charged by indictment with "intentionally and knowingly causing the death of an individual." *Id.* at 207. The jury instructions, however, "added another offense: intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes the death of an individual." *Id.* Noting that such a variance was a serious matter under both Texas law and federal law the court stated:

Under federal constitutional law, a violation of the due process clause results when a criminal defendant is convicted of a crime he was never charged with committing: "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in the trial of the issues raised by that charge ... are among the constitutional rights of every accused." (Citations and footnotes omitted). Counsel's failure to object to or appeal such an egregious flaw in his trial cannot be considered within the "wide range of professionally competent assistance."

736 F.2d at 207.

I can find no significant distinction between this case and *Ricalday* insofar as the ultimate import of counsels' actions herein. Indeed, in this case the error would seem more significant for purposes of the sixth amendment analysis in that counsel themselves actively created the variance, and obviously did not object to the giving of their own proposed instruction. My view of the applicable law leads me to conclude that petitioner's counsel were not acting as effective advocates for their client at the time that they submitted a proposed instruction which endorsed an uncharged crime against him. Their action differs only in degree from counsel's fail-

ure to object in *Ricalday,* and I conclude that their conduct fell outside the wide range of professional competence which is required by *Strickland.*

This does not end the inquiry. As noted above, in order for petitioner to succeed on his claim, he must also show that he was prejudiced by the actions of counsel "because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different." *Lawrence v. Lockhart, supra.* The Court in *Strickland* defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

The respondent argues that in the absence of the "lesser-included" conspiracy to commit murder instruction, the petitioner would likely have been convicted of either murder in the first degree or murder in the second degree given that the evidence admitted at trial, if believed, would have supported a conviction on either charge. Undoubtedly, based on the record before this court, a conviction on either first or second degree murder would have been possible; the evidence, if believed, would have supported either verdict. However, when viewed in light of the jury's ultimate verdict,[3] I agree with the petitioner that there is a "reasonable probability" that but for the conspiracy instruction, the result of the trial would have been different. I am in full accord with the view of the dissent in *Patterson* which stated:

> [T]he instruction at issue directed the jury to determine whether Patterson conspired to commit murder if, and only if, it first determined that he was not guilty of murder in either the first or second degree. The only relevant assumption the law permits is that the jury followed the court's instruction. *State v. Murphrey,* 220 Neb. 699, 371 N.W.2d 702 (1985); *State v. Sayers,* 211 Neb. 555, 319 N.W.2d 438 (1982). Thus, the verdict means that the jury accepted Patterson's

version of the killing rather than McNitt's rendition of the events. It is tautological to observe that Patterson would not have been convicted of conspiracy had the jury not been erroneously instructed as it was.... All confidence in the outcome of Patterson's trial is undermined by this simple observation.

*State v. Patterson,* 232 Neb. at 311–12, 440 N.W.2d 242.

Indeed, in *Strickland* the Court made clear that assessments regarding what could happen, such as those factors taken into consideration by defense counsel at the time they were drafting proposed jury instructions in this case, should not be considered in the prejudice inquiry:

> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. * * * The assessment should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency. Although these factors may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, they are irrelevant to the prejudice inquiry. Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence, about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination.

---

**3.** By using this phrase I do not mean to imply that I am using "20/20 hindsight" in evaluating petitioner's claim. See, *Strickland v. Washington, supra* ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"). 466 U.S. at 669, 104 S.Ct. at 2055. Rather, I wish to point out that the evidence before the jury—examined as of the time of submission of the case—also supported acquittal.

*Strickland,* 466 U.S. at 694–95, 104 S.Ct. at 2068–69. Thus the *Strickland* prejudice inquiry directs courts, contrary to the view expressed by respondent herein and the *Patterson* majority opinion, to exclude from its determination factors such as the very real possibility, considered by counsel in submitting the conspiracy instruction, that this defendant could have been convicted of first or second degree murder.

This is a case in which the state charged more than one individual in the shooting death of Brian Crittenden, and the two prime suspects each pointed the proverbial finger at each other as the responsible party for the actual shooting. The verdict returned by the Hall County jury was a clear indication that it did not believe Michael McNitt's testimony, the only eye-witness to the shooting besides petitioner. I conclude that the error of petitioner's trial counsel did in fact prejudice the petitioner, and based on his claim of ineffective assistance of counsel the writ should be granted.

The petitioner filed a motion to expand the record in this case and seeks an evidentiary hearing for purposes of offering testimony on his own behalf, filing # 17. Given my disposition of petitioner's first claim in this action, such a hearing is unnecessary and will be denied as moot.

IT THEREFORE HEREBY IS RECOMMENDED that the petition for writ of habeas corpus be granted, unless the petitioner is given a new trial within a reasonable time after entry of judgment.

The respondent is hereby notified that unless objection is made within ten days after he is served with a copy of this recommendation, he may be held to have waived any right he may have to appeal the court's order adopting this recommendation.

Dated September 10, 1990.